## FRANK THOMPSON, EXECUTOR, v. C. C. COBB ET AL.

### No. 1066. Decided January 9, 1902.

**1.—Power of Sale—Statute—Execution Sales.**

The power given in a mortgage to sell the land at any time after default within "lawful hours" was not affected by an existing statute requiring sales under execution to be made within certain hours on the first Tuesday in the month, though no other statute prescribed any lawful hours of sale; and sale was not void because made on another day than Tuesday. (Pp. 146, 147.)

**2.—Same—"Lawful Hours" Construed.**

A power to sell under mortgage within "lawful hours," in the absence of a statute prescribing hours for such sale, meant only a restriction against sale at an unusual and unreasonable hour. (P. 147.)

**3.—Trust Deed—Time of Sale—Subsequent Statute.**

The power to enforce a mortgage by trustee's sale at any time after default was a right secured by contract, which could not be impaired by a subsequent statute requiring such sales to be made on a certain day of the month. (P. 147.)

**4.—Trust Deed—Misdescription of Note.**

Errors in the description of the note secured, in a mortgage with power of sale, did not render the sale void when sufficient description to identify the note was correctly given. (Pp. 149, 150.)

**5.—Same.**

A deed of trust correctly described the note secured by its number, amount, maker, payee, place of payment, and rate of interest, but erroneously as of even date with and payable one year from the date of the deed of trust, it being dated and payable two months earlier. Held, that a sale by the trustee under the power, supported by evidence showing that this was the note intended, was not void. (Pp. 148-150.)

**6.—Same—Correction in Equity.**

Unless there was such misdescription of the note intended to be secured as to afford no means of identifying it as the one actually in existence, it was not necessary to resort to equity to correct the mistake before proceeding to sell under the power for enforcing it. (Pp. 150, 151.)

Error to the Court of Civil Appeals for the Fifth District, in an appeal from Dallas County.

Thompson sued Cobb and others in trespass to try title. Defendants had judgment, which was affirmed on appeal by plaintiff, who then obtained writ of error.

*McCormick & Spence,* for plaintiff in error.—Trust deeds executed prior to the Act of 1889 (requiring sales under trust deed to be made in the same manner as judicial sales) are not affected by said act, nor by its re-enactment. The statute regulating sales of real estate under powers conferred by deeds of trust or other contract liens, has no application to contract remedies for sales of real estate given prior to the passage of such law. A contract securing to a creditor a right to a specific remedy whereby he may enforce a pecuniary obligation without resort to the courts, is not subject to such changes as may lawfully be made in the ordinary remedies prescribed by law. Hence the act of the Texas Legislature of March 21, 1889, can not, nor can its subsequent re-enactment, be given effect as to contract remedies contained in deeds of trust executed before said act was operative, in cases in which the remedies prescribed by such statute differ from remedies specified by such contracts. A contract given by a trust deed upon land to secure indebtedness, executed in 1886, remains unaffected by the act of the Texas Legislature of March 21, 1889, regulating sales of land under trust deeds. Such contract is not controlled or in anywise affected by said statute, nor by its re-enactment, and such remedy may be invoked, although it differs from the remedy and mode of procedure prescribed by the statute. It is error for the court to apply the statute regulating sales of real estate under deeds of trust to trust deeds executed prior to the passage of said statute. The term "within lawful hours" is not synonymous with "within lawful sale days," and the term does not mean "upon statutory sale days." Gen. Laws 21st Leg., p. 143, Act of March 21, 1889; Rev. Stats., 1895, art. 2369; Building Assn. v. Hardy, 86 Texas, 610; Goddard v. Reagan, 8 Texas Civ. App., 272; Chandler v. Peters, 44 S. W. Rep., 867; Bell v. Williams, 56 S. W. Rep., 774.

A mortgage with power of sale is not rendered invalid, nor is the trustee's power to foreclose by sale abrogated by reason of a misdescription in the mortgage of the note evidencing the debt secured thereby, as to its date and date of maturity. Parol evidence is admissible to identify the note and show that the note produced is the note referred to in the mortgage and mutually intended by the parties thereto to be secured thereby. The material inquiry is, does the debt exist? The validity of the mortgage does not depend upon the description of the debt contained in it; and if the description in the mortgage, of the note evidencing the debt secured, is erroneous as to the date and date of maturity of the note, parol evidence is admissible to identify the note mutually intended by the parties to the mortgage to be secured thereby, and the record of such a mortgage, notwithstanding the error, is constructive notice of the lien to third parties.

The simultaneous execution and delivery of two or more instruments of writing between the same parties, concerning the same subject matter, constitutes the contract between the parties, and such several instruments should be looked into in giving effect to the contract. The true

amount of a debt secured by a mortgage—or other feature of such debt, as its date, rate of interest, to whom payable, and maturity—need not be, and often is not, discernible from the mortgage itself. But if there be such a reference to the debt and to the party owing it, as will direct inquiry, which, if pursued, will lead to discovery of the truth in respect to the matter, the mortgage is valid; and this is so, not only as between the parties themselves, but as to third persons charged by the record with notice of the existence of such mortgage.

When the description of the debt, as given in a mortgage with power of sale, is sufficient to direct a person to the proper source of information as to the amount of the incumbrance, or as to any other feature or particular of the lien debt, the mortgage will not be held invalid on the ground of uncertainty in the description of the debt or liability intended to be secured. Parol evidence is admissible in such case to identify the debt mutually intended by the parties to the mortgage to be secured thereby, and although the mortgage may recite an incorrect date and date of maturity of the note evidencing the debt secured thereby, parol evidence is competent to identify the real note, which the parties to the mortgage mutually intended should be secured thereby, and this may be done without resorting to a proceeding in equity to reform the mortgage. In such case the mortgage needs no reformation, nor is the power of sale conferred by the mortgage upon the trustee taken away by such slight clerical error and misdescription of the mortgage debt.

When plaintiff, in trespass to try title, shows against defendant a superior title from a common source to the land in controversy, one link in plaintiff's chain of title being a trust deed, it is error in the trial judge to hold such title invalid and the trust deed void because the description in the trust deed of the debt secured thereby is erroneous as to its date and maturity and maturity of semi-annual interest, when the plaintiff stands ready and able and offers to prove the real note evidencing the secured debt, which differs from the description thereof in the mortgage only as to date and dates of maturity of principal and interest. It is error for the court, in such case, to hold that such discrepancy and misdescription invalidates the trust deed, takes away the power of the trustee named therein to sell in accordance with the powers therein granted to him, and renders his deed to plaintiff a nullity. In such case, it is error for the trial court to direct a verdict for the defendants. Jones on Mort., 4 ed., chap. 9, and especially secs. 343, 349, 350, 351, 352, 353, 354, 367; Jones on Chat. Mort., 3 ed., sec. 79 et seq.; also, secs. 85 to 98, inclusive; Clement v. Lumber Co., 82 Texas, 424, and authorities therein cited; Paschault v. Cochran, 34 Fed. Rep., 358; Babcock v. Lisk, 57 Ill., 327; McKelvain v. Allen, 58 Texas, 386; Stoughton v. Pasco, 13 Am. Dec., 72; Johns. v. Church, 12 Pick., 557; Hall, Adm'r, v. Tufts, 18 Pick., 455; Crews v. Taylor, 56 Texas, 466; Saunders v. Hartwell, 61 Texas, 686; Schuster v. La Londe, 57 Texas, 30; Bell v. Fleming's Executors, 12 N. J. Eq., 13.

Parties dealing with lands can not ignore a trust deed thereon duly recorded, and be held unaffected by notice of such trust deed lien, simply because the trust deed misdescribed the date and date of maturity of the note evidencing the secured debt. Such slight misdescription in the trust deed of the evidence of the secured debt is not fatal to the trust deed, nor is the power of the trustee therein named to sell the land thereby annulled.

After the trustee's foreclosure sale in accordance with his powers conferred by such trust deed, it is competent, in a suit of trespass to try title by the purchaser at the trustee's sale, to show by parol evidence the real debt which the trust deed secured, and that such misdescription of it in the trust deed arose by mutual and clerical error. Such misdescription is not fatal to the mortgage, but is sufficient to put all persons dealing with the mortgaged property upon notice and inquiry.

As parol evidence is admissible to identify the property secured by the mortgage, when the description thereof in the instrument is insufficient or erroneous, so parol evidence is likewise admissible to identify the debt mutually intended by the parties to such instrument to be secured thereby, and a clerical error in the mortgage as to the description of the evidence of the mortgage debt in respect to the date and dates of maturity of the principal and interest thereof, may be explained and corrected by parol evidence, and this without a suit to reform the mortgage. Such an instrument needs no reformation by a proceeding in equity, but is valid, not only as between the parties, but as to third persons dealing with the mortgaged property, charged with notice of the real debt by the record of the mortgage. Such record is sufficient to put all persons on inquiry. Same authorities, and also, Jones on Chat. Mort., sec. 53 et seq., and especially sec. 61 and authorities there cited; 1 Jones on Mort., 4 ed., sec. 529, and authorities there cited, also secs. 65, 66; White v. Herman, 51 Ill., 243; 80 Ill., 208; Ilse v. Seinsheimer, 76 Texas, 459; Oxsheer v. Watt, 91 Texas, 124; Avery v. Popper, 92 Texas, 337; Brown on Parol Ev., sec. 510, and cases cited.

*Cobb & Avery* and *Watts & Aldredge,* for defendants in error.—Where a deed of trust provides that a sale by the trustee therein shall be made at the court house door "within lawful hours," such sale must be made on the first Tuesday in some month between the hours of 10 o'clock a. m. and 4 o'clock p. m.

When a deed of trust provides that sale thereunder may be made by the trustee at the request of the holder of the note described therein, the sale can be made only at the request of the holder of that particular note, and if made at the request of any other person, the sale is void, and it is not sufficient to authorize the sale that is made at the request of the holder of another note made by the maker of the deed of trust and not described in said deed of trust. 13 Am. and Eng. Enc. of Law, 221 (term Legal or Lawful); 26 Am. and Eng. Enc. of Law, 897; Magee v. Burch, 18 S. W. Rep., 1078.

In an action at law of trespass to try title, for possession of land, with only the usual allegations in such actions, where plaintiff claims title through a sale made by a trustee under a deed of trust which particularly describes the note intended to be secured by giving its date and date of maturity and rate of interest, and also certain interest coupons by date, dates of maturity, etc., the plaintiff can not introduce parol evidence to show that such description was wrong and was given by mistake, and that the intention of the parties was to secure a different note with different date and date of maturity and with different interest coupons; and especially is this true where the maker of the deed of trust is not a party to the suit, and there are no allegations of mistake, intention, etc.   Clark v. Gregory, 87 Texas, 189; Jones on Chat. Mort., secs. 63, 88; Jones on Mort., secs. 97, 1464; Follett v. Heath, 15 Wis., 665; Edgell v. Stanford, 3 Vt., 202; Jewett v. Preston, 27 Me., 400; Bramhall v. Flood, 41 Conn., 68; Dalton v. Rainey, 75 Texas, 516; Fuller v. O'Neal, 69 Texas, 350; 2 Perry on Trusts, sec. 783.

Where a deed of trust provides that upon failure to pay an interest coupon attached to the secured note, the holder of the note shall have the right to have the land sold by the trustee, and such failure to pay occurred more than ten years ago, then no such sale can be made, and such right becomes a stale demand and is barred by limitation and laches. Gardner v. Terry, 12 S. W. Rep., 888; Bush v. White, 85 Mo., 339; Smith v. Pate, 91 Texas, 596; Goldfrank v. Young, 64 Texas, 437.

Where a great many years have elapsed since the maturity of a note and no interest has been paid for over ten years, the debt is presumed to be satisfied, and no sale can be made by a trustee in a deed of trust given to secure the note.   Johnson v. Lockhart, 50 S. W. Rep., 955; Walker v. Emerson, 20 Texas, 712; Nevitt v. Bacon, 32 Miss., 227; Cape Girardeau Co. v. Harbison, 58 Mo., 96; 8 Am. and Eng. Enc. of Law, 1 ed., 197.

The foreclosure of deeds of trusts by a trustee out of court is not favored by the courts.   Fuller v. O'Neal, 69 Texas, 350; Perry on Trusts, sec. 783.

In the case at bar the deed of trust authorized a sale only upon failure to pay a certain note falling due September 20, 1888, or certain coupons falling due September 20th and March 20th each year.   No such note or coupons were held by plaintiff, but he claimed the right to sell for default in payment of a different note and coupons, which he claims ought to have been described in the deed of trust.   We submit that he could not make this sale, although he might have had the right to foreclose through the courts upon proper allegations, proof, etc.

On the question of the exclusion of the parol evidence offered by plaintiff, we do not find it necessary to either admit or deny the broad propositions laid down by plaintiff in his brief.   We think the question to be decided here is embraced in much narrower limits.   Neither do we think the authorities cited by plaintiff are in point on this ques-

tion. They are all authorities on what may be proved in equitable foreclosure suits under proper allegations and with proper parties before the court, and do not apply to this case. The question here presented is whether this evidence was admissible in this action at law of trespass to try title, and with only these allegations and parties before the court. Whether it would have been admissible in some other form of action or under other circumstances, need not be discussed.

If the judgment below is affirmed, the following need not be considered. But if the judgment is reversed, it should be considered and an opinion given for the guidance of the court below in another trial, as these questions are raised by the pleadings and evidence and must be decided. The deed of trust provides that upon failure to pay any interest coupon therein mentioned, the whole debt may be declared due and the holder of the note might have the land sold by the trustee at once. The first coupon mentioned in the deed of trust fell due March 20, 1887, and the first coupon attached to the note held by plaintiff, fell due January 19, 1887. Plaintiff claimed that neither of these coupons was paid. The note described in the deed of trust fell due September 20, 1888, and the note held by plaintiff became due July 19, 1888. The sale by the trustee occurred June 1, 1898. We submit that no valid sale could be made by the trustee after the lapse of ten years from the time the right to sell first arose. This point has never been decided by our courts, so far as we know. It has never been decided that the right to sell was never lost. It seems to be against the policy of our law to so hold, as we have a period of limitation, prescribed for every form of action. It ought not to be held that such a sale could be made after the lapse of ten, twenty, or even a hundred years. As ten years is our longest statute of limitations, this should be at least the limit of such sales. No prudent man will buy at sales under these old deeds of trust, and allowing them to be made, is practically giving the security to the creditor for an old barred and worthless debt.

In Goldfrank v. Young, 64 Texas, 432, it was held that equity would not enjoin a sale under a deed of trust upon the simple fact that the note secured was more than four years past due. In that case, only ten days more than four years had· elapsed, the semi-annual interest had been paid up within two years before the suit was brought, and there was no claim that the debt was unjust, or had been paid, or was disputed. In that case, Judge Stayton says: "In cases of this character the rules in equity applicable to laches and stale claim would doubtless have their proper effect." If this means anything, it means that there are cases in which no sale could be made owing to lapse of time. We submit that the case at bar requires the application of laches and stale claim, as mentioned by Judge Stayton, and these forbid the sale.

The fact that the principal of the note did not fall due until within ten years before the sale, can not affect this question in this case. When the principal fell due, the creditor was not bound to have the land

sold. He could have it sold or not at his option. So when the first interest coupon fell due, he had a right to have the land sold or not at his option. This right was perfect long before the principal of the note fell due, and was neither increased nor diminished by that fact. The true question is, when did the right to sell first arise and when was it lost? In this case this right to sell arose more than ten years before the sale, and we submit that it was lost before the sale occurred.

After the lapse of a great many years without the payment of interest or recognition of the debt, it is presumed to be paid and satisfied. With this presumption in force, a sale under the deed of trust ought not to be allowed, as it must necessarily result in a ruinous sacrifice of the property, as no one will buy under the circumstances. The authorities we cite may not be directly in point, but the principles they announce support our contentions.

WILLIAMS, ASSOCIATE JUSTICE.—This was an action of trespass to try title brought by plaintiff in error, as executor of the estate of James Thompson, deceased, to recover of defendants in error the land in controversy. Judgment was rendered for the defendants in the District Court and affirmed in the Court of Civil Appeals. The plaintiff claimed through a deed of trust executed by W. P. Ellison to F. L. Irvine, trustee, September 20, 1886, to secure a note given by Ellison to James Thompson, and a deed from F. W. Angell, substitute trustee thereunder, to plaintiff, as executor of the will of the beneficiary, executed in pursuance of a sale of the property, made Wednesday, June 1, 1898. The sale was held void by the court below and the judgment for the defendants resulted.

The objections to the trustee's sale are two: (1) That it was made on Wednesday instead of the first Monday in the month; (2) that no such note as that described in the deed of trust was in existence at the time of sale, and hence there was no power of sale in the trustee.

The first objection is based, firstly, upon the language of the deed of trust requiring the sale to be made within "lawful hours," the contention being that, as there was then in force no statute fixing the hours for sales of real estate, except that requiring sales under execution to be made within certain hours on the first Tuesday in the month, the deed had reference to that provision and only authorized a sale within those hours on that day; and secondly, upon the statute subsequently passed requiring sales under trust deeds to be made as sales under execution, the proposition here being that as the deed fixed no definite time at which the sale should take place, the Legislature had power to prescribe one even after its execution.

The deed authorized the sale to be made "at any time" after default, "within lawful hours," no reference being made to the law regulating execution sales nor to any particular day. The notice to be given and the place where the sale is to take place are carefully stated in the deed, and, if it had been the purpose of the parties to require the

sale to be made on a particular day, they would probably have specified it. If the words "lawful hours" could be held to refer to such time of the day as was prescribed by a statute, not referred to, for sales of a different kind, it would not follow that those hours in a particular day were meant. The sole limitation upon the power to sell at any time is the requirement that it be done within lawful hours; and if this were held to mean the hours between 10 and 4 prescribed by statute, a further one fixing a certain day could not be added by construction. But we are not prepared to hold that the parties had reference to the statute at all. They were providing by contract for a sale in accordance with a power defined in the deed itself, and expressed no intention that the statute in existence, regulating sales under legal process, should in any way affect the exercise of the power. The language employed means no more than that the sale should be made at an hour when it would be lawful to make such a sale as that provided for. A trustee, in executing such a power, could not, consistently with principles of equity, cause a sacrifice of the property by selling at an unusual and unreasonable hour; and it was against such injuries as this the provision was probably directed.

Nor can it be held that the subsequent statute restricted the power of the trustee and required the sale to be made on the first Tuesday in the month. The effect of the statute upon deeds of trust executed before its enactment was considered in the case of the International Building and Loan Association v. Hardy, 86 Texas, 610. The deed there in question required a notice differing from that prescribed by the subsequently enacted statute; and the question was whether or not the statute so applied as to require the notice prescribed by it to be given. It would seem that both the statute and the deed could have been complied with, but it was held in effect that it was not in the power of the Legislature to take away the right of the parties created by the contract to have the property sold upon the terms and conditions and in the manner which they had agreed upon.

The gist of that decision is that the parties, by their contract, had acquired the right to have the property sold by complying with the provisions of the deed; that this constituted a part of the obligation of the contract which could not be impaired by subsequent legislation, and that the imposition of additional conditions upon the exercise of the right would be such an impairment. The principles there laid down control this case. By omitting to fix a day upon which the sale should be made and empowering the trustee to sell at any time, the parties gave him, as their common agent, a discretion to select a day when, in his judgment, the sale could be made to the best advantage of all concerned. Hess v. Dean, 66 Texas, 668. It was their right to have this done in accordance with their contract "at any time" after default. The statute, if held to take away the power to make it at any other time than on the first Tuesday in the month, would

not only add an additional condition, but would restrict the power defined in the deed and the consequent rights of the parties to it.

The second objection to the trustee's sale is the one which was sustained by the Court of Civil Appeals. It grows out of a misdescription in the deed of trust of the note secured by it. The description of the note therein was that it was No. 16, of even date with the deed, for the principal sum of $700, made by W. P. Ellison, payable to the order of James Thompson, at the First National Bank, Davenport, Iowa, two years after date, with interest at 12 per cent per annum, payable semi-annually on the 20th days of March and September (according to the terms of four interest coupons thereto annexed), with agreement for maturity of the whole at the option of the holder, upon default in payment of any installment. It was shown that at date of sale Thompson's estate owned no note answering all of the particulars given in the deed, but plaintiff produced a note which corresponded with the deed in every respect, except that it bore date July 19, 1886, instead of September 20, 1886, the date of the deed, and was payable two years from its date instead of two years from the date of the deed, and the interest coupons were payable on the 19th days of January and July instead of the 20th days of September and March, as stated in the deed.

Plaintiff offered to show that this was the only note ever executed by Ellison to Thompson and was the one intended to be secured, and that the statement in the deed of the date and times of payment of the principal and coupons was due to a mistake of the draughtsman. This was excluded and the deed held insufficient to support the action of the trustee.

The view taken by the district judge and the Court of Civil Appeals was that, until the mistake had been corrected by proper proceeding in equity to reform, the trustee had no power to sell, and the note offered would not support plaintiff's claim of title under the deed of trust. It may be that this would be true had there been in the deed of trust such a total misdescription of the note intended to be secured that it would afford no means of identifying that actually in existence. The cases relied on to support the judgment are Follett v. Heath, 15 Wis., 601; Jewett v. Preston, 27 Me., 405; Bramhall v. Flood, 41 Conn., 68.

In the case first cited, the mortgage was given to secure a note for $530, dated November 16, 1858, payable one year after date. The note relied on to support it was for $660, dated March 15, 1859, and payable thirty days after date. It was held that it could not be shown, in an action involving title to the mortgaged property, that the note produced was the one intended to be secured, for the reason that the evidence was in writing and gave no description of the note relied on and could not be varied by parol.

In the second case, the mortgage recited two notes, one for $500 and one for $700, of given dates. The only evidence of the existence

of any notes held by the mortgagee was of three notes, one for $800, one for $1000, with a credit indorsed of $500, and one for $700, none of which corresponded in date with those mentioned in the mortgage. The court decided against the mortgagee on the ground that the mortgage had never been delivered, and then referred to the state of the evidence as a further difficulty in the way of enforcing it. It does not appear that any attempt was made to show that either of the notes actually held by the mortgagee was intended to be secured by the mortgage, and it must be conceded that there would have been difficulty in making the mortgage apply to any two of the three notes. This case did not, therefore, involve the question now before us, and besides, the question there before the court was not definitely decided.

Barrows v. Turner, 50 Maine, 127, was a case in which a note, subsequent in date to the mortgage, was produced differing in all particulars from those given in the mortgage, and it was held that such note would not support the mortgage without proof that it was given in renewal of that described.

Bramhall v. Flood, 41 Connecticut, 68, has no application here. The mortgage in that case was held void as against creditors of the mortgagor, under a rule existing in that State and said to be exceptional, by which such instruments, in order to affect creditors, are required to describe the debt secured with accuracy and certainty. The effect of the mortgage as between the parties was not considered, nor do the facts bear such resemblance to those of this case as to make the decision of any value in determining the question before us.

It may be conceded that the Wisconsin case and the second case from Maine were correctly decided. The notes produced differed from those described in the mortgage in all of the particulars given in the latter instruments to identify the debt secured. There were, therefore, in the mortgages no circumstances specified by which the notes produced could be identified as the ones secured, after rejecting the particulars in which the mortgage differed from the notes held by the mortgagee. This distinction is sharply drawn in the subsequent case of Paine v. Benton, 32 Wisconsin, 495, where the mortgage described a note by many particulars, among which were the statements that it was executed "on or about" the 8th day of August, 1867, and payable on or before one year from date. The note produced bore date August 6, 1867, and was payable on or before the 1st day of September, 1868, about twenty-five days more than a year from its date. In all other respects, it corresponded with the note described in the mortgage. Chief Justice Dixon said: "The rule in Follett v. Heath is not to be extended beyond the facts in the case then before the court. The facts there were that the mortgage gave a totally false description of the note intended to be secured or which was so claimed." After arguing that what were claimed in the case before him, to be misdescriptions were really not such, he proceeds: "Nor is it indispensable that all the facts stated or particulars of description given

should precisely correspond with the instrument for the security of which the mortgage is executed. The maxim, 'falsa demonstratio non nocet,' applies; and if to a description already adequate and sufficient to point out with convenient certainty the note intended to be secured, there be added that which is inapt and erroneous, the latter will not vitiate the former." With reference to the admissibility of parol evidence to identify the debt, the same opinion says: "The case of Follett v. Heath only holds that such proof is inadmissible in an action at law, when the note produced is totally variant from that described in the mortgage. It is well settled, where the note agrees in some respects with that described in the mortgage, though it differs in others, that it may be proved by parol to be the note intended to be described in the mortgage." That this is the true rule, when the mortgage correctly gives sufficient particulars to enable the court by the application of them, to identify the instrument produced, after rejecting the false particulars, is recognized without conflict in a great number of authorities in which almost every variety of mistake in description is found. Sweetser v. Lowell, 33 Me., 446; Bourne v. Littlefield, 29 Me., 302; Williams v. Hilton, 35 Me., 554; Partridge v. Swazey, 46 Me., 414; Johns v. Church, 12 Pick., 557; Hall v. Tufts, 18 Pick., 455; Pierce v. Parker, 4 Metc., 80; Jackson v. Bowen, 7 Cow., 13; Boody v. Davis, 20 N. H., 140; McKinster v. Babcock, 26 N. Y., 378; Hurd v. Robinson, 11 Ohio St., 232.

The principle is clearly applicable here. Many circumstances are given in the mortgage by which the note secured may be known. The number itself removes all doubt as to its identity when it is ascertained that there was but one note; and all the other numerous particulars agree with the note produced except the date and times of payment, the errors in which flowed naturally from the erroneous recital that the note was of even date with the mortgage. These errors are to be rejected and the note identified by the remainder of the description, there being enough for the purpose; and parol evidence is admissible, if indeed it be necessary, for the purpose of identification.

It is urged that, while the rule may be as stated in proceedings in court to foreclose a mortgage, it can not be applied in a case like the present in which the plaintiff in trespass to try title relies on a sale, under the mortgage containing the misdescription, made by a trustee out of court; that, while a court, upon proof of the facts, might enforce the mortgage, the trustee would have no power to enforce it without a previous reformation. The authorities, in effect, answer this contention. Many of them were actions at law of trover or replevin in which the mortgagee had taken possession of the property upon breach of the condition of the mortgage and set it up in support of his title; and the question thus came up without any effort to procure either a reformation or a foreclosure in court. If the mortgagee, under a mortgage containing an erroneous description of the debt, may thus assert his right without reformation, it is difficult to see why a trustee,.

acting as the agent chosen by both parties, may not enforce it in the manner prescribed in it. His power comes from the deed of trust, properly construed with the aid of facts legally admissible in explanation of it. When the deed, considered with these facts, is found to secure a particular note, by the same process the power to sell is established, because it is given to enforce the payment of such note. The power to sell existing and being duly followed, the sale could not be void. If such uncertainty as to the existence of a debt secured by such a deed should arise as to create doubts in the minds of intending purchasers and embarrass the sale and threaten a sacrifice of the property, relief might be found in equity against such a consequence, where the mortgagor could not otherwise protect himself. Such complications would not necessarily arise, but could ordinarily be easily avoided; and hence the danger of their occurrence could furnish no reason for holding a sale absolutely void. No one but the debtor or those succeeding to his rights would have cause to complain of any such injurious result that might flow from a sale; and therefore they alone should be heard to complain by application to stay or set it aside; whereas if the sale were held void, the consequence would be that trespassers and other third parties could defeat it in any proceeding in which it might come up.

Our conclusion is that the court erred in excluding the evidence offered. It is contended in argument that by lapse of time after default in payment and before the sale, the claim had become stale and the power to sell had ceased, and we are urged to so hold. The question has not been tried in the court below and is not properly up for decision now.

*Reversed and remanded.*