**CHAPIN v. FRANK et al.     (No. 6635.)**

(Court of Civil Appeals of Texas.     San Antonio.     Dec. 21, 1921.     Rehearing Denied Jan. 11, 1922.)

**1. Constitutional law ⟨⟩48—Statutes presumed valid unless clearly unconstitutional.**

Every statute is presumed to be valid unless the contrary is clearly apparent, and every reasonable intendment is indulged and every reasonable doubt resolved in favor of its validity.

**2. Constitutional law ⟨⟩45—Duty of court to declare statute invalid when clearly so.**

When an act is clearly violative of either the spirit or letter of the Constitution, it is the highest duty of the courts to strike it down.

**3. Constitutional law ⟨⟩171—"Remedial statute" unconstitutional if effect is to unreasonably limit time to enforce obligation.**

Though the Legislature may enlarge, or restrict remedies on existing obligations, an act, though exclusively remedial, is invalid if a reasonable time is not allowed the parties to save existing rights, or under Const. U. S. art. 1, § 10, and Const. Tex. art. 1, §§ 16, 19, against laws impairing contracts; "remedial statutes" being those prescribing or regulating the use of the courts for the enforcement

---

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of rights and obligations arising out of contracts.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Remedial Statute.]

**4. Constitutional law ⊕=171—Legislation affecting time of enforcement agreed on by parties to contract is unconstitutional as impairing obligation.**

Though parties to a contract have no vested rights in the form of action or other procedure for the enforcement thereof, or in the limitation of the time for commencing an action, they may choose any lawful means for the enforcement of their rights without resort to the courts, and expressly stipulate the period of time within which such means may be used, or, if the existing law limits the time within which such means may continue in force, such law becomes a part of the contract, the obligation of which is impaired by any subsequent legislation affecting the remedy thus provided.

**5. Constitutional law ⊕=171—Act prohibiting enforcement of power of sale in deed of trust after four years from maturity of contract impairs obligation of contract.**

Laws 1913, c. 123, §§ 1, 3 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5693, 5695), prohibiting the enforcement of powers of sale in deeds of trust theretofore executed after four years from the maturity of the indebtedness, or, in case of notes executed subsequent to July 14, 1905, after four years after the act takes effect, is in violation of Const. U. S. art. 1, § 10, and Const. Tex. art. 1, §§ 16, 19, as impairing the obligation of an existing contract authorizing the trustee under a trust deed to sell the property "at any time" after the maturity of the indebtedness; the period being limited to 10 years by Laws 1905, c. 138, in effect at the time of the execution of the deed.

**6. Constitutional law ⊕=171—Act merely reducing period within which power of sale in deed of trust theretofore executed may be exercised held unconstitutional.**

Laws 1913, c. 123, §§ 1, 3 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5693, 5695), limiting the period within which a power of sale in a deed of trust may be enforced to four years after maturity of the indebtedness, or in the case of notes executed after July 14, 1905, to four years after the act takes effect, is unconstitutional as impairing the obligation of a deed of trust executed in May, 1911, while Laws 1905, c. 138, fixing 10 years was in effect, though the effect of the act was not to destroy the remedy agreed on by the parties, but to give them five years from the date of the maturity of the indebtedness in May, 1912, within which to exercise the power of sale.

Appeal from District Court, Bexar County; S. G. Tayloe, Judge.

Action by Aaron Frank against D. B. Chapin and the State Bank & Trust Company. Judgment for plaintiff, and defendant bank appeals. Reversed and rendered.

Kampmann, Burney & Browne, of San Antonio, for appellant.

Don A. Bliss, of San Antonio, for appellee.

SMITH, J. The deed of trust here involved was executed in May, 1911, by D. B. Chapin to secure the payment of certain obligations aggregating $20,000, maturing in May, 1912. The instrument provided that a named trustee was authorized, and it was made his special duty, upon request of the beneficiary "at any time" after the maturity of the obligations, to sell the lands conveyed in the deed of trust. In accordance with the power thus conferred, and the maker of the notes being in default as to $15,000 of the principal sum, the trustee sold the land in January, 1919, to the beneficiary, the State Bank & Trust Company of San Antonio, for $1,000. In July, 1916, the owner of the land executed a second deed of trust upon the same land to secure the payment of his note for $3,000, maturing in July, 1919. Appellee, Frank, subsequently became the owner of this note and lien. In 1920, and after the sale under the first deed of trust, Frank instituted suit against Chapin to recover $1,800, the balance then due on the 1916 obligation, and to foreclose the lien given to secure the same. The State Bank & Trust Company was made a party defendant to this suit, as claiming some interest in the land. The sale of the land to the bank was held to be void, under the act of 1913 limiting the time within which powers of sale created in deeds of trust could be exercised, the bank was thus precluded, and Frank recovered as prayed for. The bank alone has appealed.

This appeal presents the one question of the validity of the act of the regular session of the Legislature in 1913 (Laws 1913, c. 123), now embraced in article 5693, Vernon's Sayles' Statutes, in so far as that act seeks to limit the period within which may be exercised powers of sale created in deeds of trust theretofore executed. Article 5693, in so far as applicable here, is as follows:

"Art. 5693. *Time in which Power of Sale may be Exercised.*—No power of sale conferred by any deed of trust, or any mortgage on real estate heretofore executed, or that may hereafter be executed, shall be enforced after the expiration of four years from the maturity of the indebtedness secured thereby, and any sale under such power after the expiration of such time shall be void, and such sale may be enjoined and the lien created in such mortgages or deeds of trust shall cease to exist four years after the maturity of the debt secured thereby. * * *"

Parts of article 5695, passed at the First Called Session of the same Legislature in 1913, should be considered in connection with article 5693. We quote those parts:

---

⊕=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"Art. 5695. *Contracts of Extension, How Made and Construed; Proviso.*—When the date of maturity of either debt referred to in either of the foregoing articles is extended, if the contract of extension is signed and acknowledged as provided for in the law relating to the execution of deeds of conveyance by the party or parties obligated to pay such indebtedness as extended and filed ·for record in the county clerk's office in the county in which the land is situated, the lien shall continue and be in force until four years after maturity of the notes as provided in such extension, the same as in the original contract and the lien shall so continue for any succeeding or additional extension so made and recorded. The date of maturity set forth in the deed of conveyance or deed of trust or mortgage or the recorded renewal and extension of the same shall ·be·,conclusive evidence of the date of maturity of the indebtedness therein mentioned, * * * and provided that the owners of all notes secured by deeds of trust or other liens and the owners of all vendor's lien notes reserved in deeds of conveyance which were executed subsequent to July 14, 1905, shall have four years after this act takes effect within which they may obtain such recorded extension as herein provided for, or bring suit to enforce the liens securing them if same are valid obligations and not already barred by the four years' statutes of limitation when this act takes effect, and if such debt is not extended of record, or suit is not brought within such four years or four years after they mature, they shall be forever barred from the right to extend such debt of record, or bring suit to enforce the lien securing the same. * * *"

It being unnecessary, we shall not undertake to define the meaning of article 5695, or to hold that it does or does not have any application to the exercise of the power of sale created in the deeds of trust there mentioned. But for the purpose of this decision, and only for that purpose, we will throughout this opinion assume that by that article this power of sale ·was continued in force until 4 years after the act took effect. If the article does not have this effect, then the reasons upon which this decision is based are thereby emphasized and strengthened.

Appellant contends that the act in question, in so far as it seeks to limit the time within which the power of sale created in the deed of trust may be exercised, is in contravention of: First, section 10, article 1, of the federal Constitution, which prohibits any state from passing any ex post facto law, or law impairing the obligation of contracts; second, of section 19, art. 1, of the state Constitution, which provides that no citizen of the state shall be deprived of life, liberty, property, privileges, or immunities except by the due course of the law of the land; and, third, of section 16 of the Bill of Rights of this state, which provides that no ex post facto or retroactive law, or any law impairing the obligation of contracts, shall be made. It may be said, then, that the whole of appel-

lant's complaint is embraced in the contention that the act, if enforced, has the effect of impairing the obligation of the contract here involved. If there is no impairment of that obligation, then the enforcement of the act cannot be said to have the effect of depriving appellant of its property without due process of the law, nor can it be said that the retroactive effect of the act is material, unless it is so by reason of its operation upon the contract in such manner as to impair its obligation. So, the controlling inquiry is whether or not the statute in question, if enforced, would have the effect of impairing the obligation of the contract involved here, which is an ordinary deed of trust which lodges in the named trustee the power to sell the land described therein, without resort to the courts, "at any time after the maturity" of the notes to secure which the conveyance was made.

The' act in question was the most recent step taken in the progress of the courts and the Legislature of this state toward cutting down the time allowed creditors in deeds of trust to exercise the power of sale of real estate. Prior to 1905, the period within which such sales were permitted was limited only by the rule of stale demand, which in turn was enlarged or restricted by the circumstances in each case, to be determined in the courts. In 1905, however, and obviously for the purpose of stabilizing the rule, the Legislature enacted a statute (Laws 1905, c. 138) arbitrarily limiting this period to 10 years from the maturity of the obligation secured by the deed of trust, thus closing the door of equity to parties to such contracts. This act, however, by its express terms, was made to apply only to instruments executed subsequent to the enactment; it did not apply to existing obligations. In 1913 the present act was passed, reducing the period to 4 years from the date of the maturity of the obligation in instruments executed subsequent to the enactment. The act went further in its effect than the act of 1905, however, in that by express terms it was made to apply to instruments theretofore executed and still in force, and as to such instruments it was provided that the power of sale should absolutely terminate at the end of 4 years from the time the act became effective, unless extended by written and recorded agreement of the parties. Apropos, it should be stated that the note secured by the deed of trust involved in this cause was executed in 1911, and was payable in 1912; and, applying the terms of this act to that instrument, the time within which the power of sale could be exercised ended in 1917. So, while under the statute in force at the time this contract was executed the power of sale ran for 10 years and would not have ceased until 1922, under the act of 1913, now in ques-

tion, it ran for only 5 years, and terminated in 1917, thus being cut in half. Although this act has been in force since 1913, it seems that the constitutionality thereof, in so far as it relates to the exercise of the power of sale created in deeds of trust then existing, has not been directly determined by any of the appellate courts, except that in the case of Womble v. Shirley, 193 S. W. 719, the Court of Civil Appeals of the Seventh District held the act invalid as applied to the deed of trust involved in that case, which was executed prior to 1905, since as to that instrument it had the effect of destroying a power of sale then in force under existing law, in contravention of the constitutional provisions invoked in this appeal. In Turner v. Gregory, 203 S. W. 615, decided by this court, the act in question, although its application was not essential to the decision there, was held to be a bar to the right to exercise the power of sale in a deed of trust there involved, but the constitutionality of the act was not brought into question, and so that decision is of no value to this discussion. Again, in Howard v. Stahl, 211 S. W. 826, decided by the Court of Civil Appeals of the Seventh District, the power of sale created in the deed of trust there involved was held to have been defeated by the provisions of the act of 1913, but the question of the constitutionality of the act was not raised in that case. So far as our search has disclosed, these three are the only cases which have passed upon this provision of the statutes, and because of the nature of those decisions they do not affect the question with which we are here confronted. Moreover, the parties have cited no case, nor have we found any, from this or any other jurisdiction, wherein the question directly involved here is raised or decided, although there are decisions, to which we will hereafter advert, that are regarded as being analogous to this question in principle.

[1, 2] The question presented is one of far-reaching importance, and is entitled to great consideration. It has its difficulties, which we have approached with diffidence, and, we hope, with a proper sense of the responsibility involved in their solution. To set aside and hold for naught a solemn enactment of the Legislature is a grave responsibility when assumed by a court, and yet it is not more so than to give validity to a statute that is vicious in its effect and in derogation of the organic law of the land. It is well settled, of course, that every statute is presumed to be valid unless the contrary is clearly apparent; that every reasonable intendment is indulged, and every reasonable doubt resolved, in favor of its validity, so that to reasonably doubt is but to declare its validity. To set aside the solemn act of a co-ordinate branch of the government is the

236 S.W.—64

highest prerogative of the courts, and yet, when it is ascertained that such act is clearly violative of either the spirit or letter of the Constitution, federal or state, it becomes the highest duty of the courts to strike it down.

[3] The principle embraced in the inhibition in federal and state Constitutions against the enactment of laws impairing the obligations of contract is the inviolability of contracts, and this principle should be protected in whatever form assailed. The inhibition is against all laws, in so far as they infringe that principle, and this includes even remedial laws where the remedy has the effect of impairing the obligation of contract, although it is conceded, of course, that, as a general rule, the Legislature has the power to change, enlarge, or restrict remedies for the enforcement through the courts of rights and obligations created and existing in contracts executed prior to such enactment, provided, also, of course, the parties to such contracts are in such enactment allowed a reasonable time within which to save their existing rights from being lost through the operation of the statute. If a reasonable time is not thus provided for, or if an adequate remedy is not left in place of the one taken, then the act, although exclusively remedial in its nature, is invalid, because, after all, its effect is to impair the obligation of contracts. This much, then, may be said of remedial statutes; that is to say, of statutes prescribing or regulating the use of the courts of the land for the enforcement of rights and obligations arising out of contracts. This rule is so well settled, and is founded upon so many authorities in so many jurisdictions, that it would seem useless to cite any of these authorities, yet we deem it not inappropriate to quote this apt statement of it by Chief Justice Waite, in Terry v. Anderson, 95 U. S. 628, 24 L. Ed. 365.

"This court has often decided that statutes of limitation affecting existing rights are not unconstitutional, if a reasonable time is given for the commencement of an action before the bar takes effect." And "it is difficult to see why, if the Legislature may prescribe a limitation where none existed before, it may not change one which has already been established. The parties to a contract have no more a vested interest in a particular limitation which has been fixed than they have in an unrestricted right to sue. They have no more a vested interest in the time for the commencement of an action than they have in the form of the action to be commenced; and, as to the forms of action or modes of remedy, it is well settled that the Legislature may change them at its discretion, provided adequate means of enforcing the right remain."

[4] What is said, however, of legislation affecting remedies to be pursued through the courts has no application to retroactive leg-

islation affecting remedies agreed upon between parties, and incorporated into their contracts, whereby their rights and. obligations are sought to be enforced through remedies of their own choosing, to be effectuated outside of, and without resort to, the courts. The process of courts is not a subject of inviolable contracts, and the proceeding to bring a party before the court and to adjudicate a controversy with him is a matter of public concern, and to preserve and guard it the Legislature must not be fettered by contracts of citizens. Worsham v. Stevens, 66 Tex. 91, 17 S. W. 404. Legislative control of the machinery of the courts and of the modes .and seasonability of actions and procedure therein is universal, and has long been so, and the parties to this and every contract are presumed to have known this, to have the fact in contemplation at the time of making their contracts, and to have anticipated that the Legislature, having the power and exercising that power with increasing frequency, would likely change the forms of action, and restrict or extend the time for commencing such actions. And so a citizen, in entering into a contract with another, does not acquire a vested right in the form of action, or in the court procedure, or in the limitation of the time for commencing the action, existing by virtue of the laws in force at the time of making the contract. Worsham v. Stevens, 66 Tex. 90, 17 S. W. 404.

But the citizen is hedged about by no such restrictions when he sits across the table from his neighbor for the purpose of entering into a private, but none the less solemn, contract, in which, after their respective rights and liabilities as between themselves are settled and expressed, they mutually agree upon a means of enforcing those rights and liabilities outside of and without resort to the machinery of the courts. In such case the parties to the contract. may choose any lawful means for such enforcement, and expressly stipulate the period of time within which the means may be used; or, if the existing law recognizes the particular means agreed upon, but limits the time within which it may continue in force, then such law becomes a part of the contract, and has the same force and effect as if its provisions were expressly stipulated. In either case, any subsequent legislation which affects the remedy thus provided, or the manner of its enforcement, is held to impair the obligation of the contract, in contravention of the constitutional inhibition, because the means agreed upon in a contract for the enforcement of the rights of the parties to the contract are as much a part of the obligation as are the substantive rights. U. S. v. Quincy, 4 Wall. 535, 18 L. Ed. 403; Cooley, Const. Lim. (7th Ed.) 403; 6 R. C. L. §§ 356, 360; Bronson v. Kinzie, 1 How. 311, 11 L. Ed. 143;

McCracken v. Hayward, 2 How. 608, 11 L. Ed. 397; Seibert v. United States, 122 U. S. 284, 7 Sup. Ct. 1190, 30 L. Ed. 1161; Edwards v. Kearzey, 96 U. S. 595, 24 L. Ed. 793; Barnitz v. Beverly, 163 U. S. 118, 16 Sup. Ct. 1042, 41 L. Ed. 93; Louisiana v. New Orleans, 102 U. S. 203, 26 L. Ed. 132; Loan Association v. Hardy, 86 Tex. 610, 26 S. W. 497, 24 L. R. A. 284, 40 Am. St. Rep. 870; Thompson v. Cobb, 95 Tex. 146, 65 S. W. 1090, 93 Am. St. Rep. 820; Standifer v. Wilson, 93 Tex. 232, 54 S. W. 898; Simms v. Wright, 56 S. W. 111; Chandler v. Peters, 44 S. W. 867; Scobey v. Gibson, 17 Ind. 572, 79 Am. Dec. 492; Society v. Philadelphia, 31 Pa. 175, 72 Am. Dec. 734. It is said in 6 R. C. L. § 356:

"It sometimes happens that the parties contract concerning the remedy; for example, they may stipulate in the body of the contract that, in case of failure of payment by a certain day of a debt secured by mortgage, there shall be no stay of execution, or that the mortgagee may enter and sell the mortgaged estate, or that all exemption rights shall be waived. In such cases the rule is that the remedy becomes part of the obligation of the contract, and any subsequent statute which affects the remedy impairs the obligation and is unconstitutional. The effect of such specific references to and incorporation of remedies is to deny to the Legislature some of the power which it might otherwise have over the alteration and substitution of remedies, and when a contract is made stipulating for a specific remedy it cannot be modified by subsequent legislation, requiring the parties to pursue a different remedy, even though in stipulating as to the remedy the directions of the statute are disregarded."

And with reference to the very question here involved the same authority (section 360) says:

"The general rule is that the law in force at the time a mortgage is executed, with all the conditions and limitations it imposes, is the law which determines the force and effect of a mortgage; and hence it is that changes in the laws, imposing conditions and restrictions on a mortgagee in the enforcement of his right, and which affect its substance, are invalid as impairing the obligation and cannot prevail. Following this rule the law will not permit changes to be made by statute which, as to pre-existing mortgages, extend or otherwise alter the period of redemption, even though a sale has not yet taken place; or direct that decrees be made on a longer period of credit than was allowed at the date of the mortgage; or alter the right of a mortgagee to sale on foreclosure subject only to the redemption provided for by the law in force when the mortgage was made. Under the same rule a statute which authorizes the redemption of property sold upon foreclosure of a mortgage, where no right of redemption previously existed, cannot constitutionally apply to a sale under a mortgage executed before its passage."

It is said by the Supreme Court of the United States, in Bronson v. Kinzie, supra:

"When this contract was made, no statute had been passed by the state changing the rules of law or equity in relation to a contract of this kind. None such, at least, has been brought to the notice of the court; and it must therefore be governed, and the rights of the parties under it measured, by the rules above stated. They were the laws of Illinois at the time, and, therefore entered into the contract and formed a part of it without any express stipulation to that effect in the deed. Thus, for example, there is no covenant in the instrument giving the mortgagor the right to redeem, by paying the money after the day limited in the deed, and before he was foreclosed by the decree of the Court of Chancery. Yet no one doubts his right or his remedy; for by the laws of the state then in force this right and this remedy were a part of the law of the contract, without any express agreement by the parties. So, also, the rights of the mortgagee, as known to the laws, required no express stipulation to define or secure them. They were annexed to the contract at the time it was made, and formed a part of it; and any subsequent law, impairing the rights thus acquired, impairs the obligations which the contract imposed."

And the present Chief Justice of this court, in Simms v. Wright, supra, quoted with approval the following extract from a decision of the Supreme Court of Texas in Standifer v. Wilson, supra:

"It is settled that the laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as if they were expressly referred to and incorporated in its terms. This principle embraces alike those which affect its validity, construction, discharge, and enforcement."

[5] As has been seen, the act of 1905 limited to 10 years the time within which powers of sale created in subsequently executed deeds of trust might be exercised. This act was in effect when the contract here involved was executed, and under the decisions this provision became a part of the obligation of the contract, and must be given the same force as if it had been an express stipulation therein. Accordingly, in testing the effect of the act of 1913 upon the contract, we must regard that instrument as embracing an express stipulation that the trustee should retain the power of sale until 10 years after the maturity of the debt. The act of 1913, if enforced, would have the effect of reducing this period to 5 years, thus operating directly upon and materially affecting a substantial obligation in an existing contract. We think the act, for this purpose, clearly contravenes both the letter and spirit of the constitutional inhibition here invoked, and cannot be upheld.

[6] It is true that the remedy agreed upon by the parties to this contract was not destroyed by the act in question. It is true

that it gave the parties 5 years from the date of the maturity of the obligation within which to exercise the power of sale given the mortgagee as a means for the enforcement of the substantive obligation of the contract. But this condition does not excuse the Legislature's interference with a solemn contract then in force between citizens, which was lawfully entered into for lawful purposes upon lawful terms and conditions. The utmost freedom to enter into any contract permitted by existing law is the inherent right of every citizen, and when he exercises that right in a lawful way, no Legislature has the power to disturb the purposes or effect, or in any manner rewrite any of the provisions of that contract, or make a new contract for him, and the right to comply with and enforce its provisions as written is fixed and vested. The degree in which the offending statute may impair the obligation of the contract is immaterial. The only question is, Has the obligation been encroached upon in any respect? If so, then the statute must not be given effect. Sturges v. Crowninshield, 4 Wheat. 197, 4 L. Ed. 529; Planters' Bank v. Sharp, 6 How. 327, 12 L. Ed. 447; Ogden v. Saunders, 12 Wheat. 213, 6 L. Ed. 606; Loan Association v. Hardy, 86 Tex. 610, 26 S. W. 497, 24 L. R. A. 284, 40 Am. St. Rep. 870. In the Planters' Bank Case, it was said:

"One of the tests that a contract has been impaired is that its value has by legislation been diminished. It is not, by the Constitution, to be impaired at all. That is not a question of degree or manner or cause, but of encroaching in any respect on its obligation, dispensing with any part of its force."

And in Loan Association v. Hardy, Chief Justice Stayton said:

"When parties, looking to all the facts bearing on their respective interests, make a contract whereby specific remedy, not given by law, is secured for enforcement of rights, courts ought not to inquire as to the extent of injury, which may result if a law subsequently enacted, and affecting the remedy, be given effect; for such legislation impairs the obligation of contract, takes away vested rights, and is therefore prohibited by the Constitution."

Can it be said that the act here in question can survive this test prescribed by our two highest courts? The contract involved provided a means for its enforcement, and with the aid of existing law prescribed a period of 10 years within which that means might be exercised. The act in question cut that period in half. In testing the validity of a legislative enactment, it is proper to consider in a given case the maximum mischief that may be done by giving it effect. With that in view, it may be surmised, for instance, that the period of 10 years written

by law into the contract, for the exercise of the power of sale, was the controlling consideration inducing the mortgagee to execute the mortgage; he may have concluded from existing conditions that, while the property was not then ample security for the credit he was extending, it would likely increase in value, so that by the end of the 10-year period its value would surely be such that the proceeds from its sale would be sufficient to cover the debt. He had a right under existing law to exercise his judgment, or speculate, to this end, and it may be that this very consideration caused him to extend the credit to the mortgagor. But whether this was the controlling consideration or not, in entering into the contract, the parties must be supposed to have determined for themselves that the full 10-year period within which the power of sale could be exercised would be more beneficial to them than a shorter period, which they could have designated, and, having determined this, the Legislature of the state did not have the power to rewrite the contract for them and cut this period in half, or make any other substantial change in that period. Our own courts have repeatedly declared this principle. Loan Association v. Hardy, 86 Tex. 610, 26 S. W. 497, 24 L. R. A. 284, 40 Am. St. Rep. 870; Thompson v. Cobb, 95 Tex. 146, 65 S. W. 1090, 93 Am. St. Rep. 820; Goddard v. Reagan, 8 Tex. Civ. App. 272, 28 S. W. 352; Chandler v. Peters, 44 S. W. 867.

In the case first cited the deed of trust there in question prescribed the notice upon which the sale should be made by the trustee. Subsequent to the execution of the instrument, but prior to the exercise of the power of sale, the Legislature prescribed a slightly different method of notice of such sale, and the Supreme Court, in a very thorough opinion by Chief Justice Stayton, held that it was intended by the act to affect existing contracts, but that for that purpose it was unconstitutional as impairing the obligations of such contracts; that it could not be given effect as to contracts "executed before it was operative in cases in which the remedy differs from the remedy prescribed by contract." It seems in that case the contract provided that notice of sale be published in a daily paper of the city of San Antonio for 10 days prior to sale day, whereas, in the subsequently enacted statute notice of such sales were required to be posted at three public places in the county for 20 successive days before the sale. It will be seen that the difference in the remedy prescribed by the contract and that afforded by the statute was slight; in the one case the notice was to be published in a newspaper for 10 days, in the other, by posting for 20 days. A less material impairment of the contract could hardly be imagined. Nevertheless, the Supreme Court held that there was an impairment of the obligation, rendering the statute invalid, saying:

"The necessary effect of the law, when the period for advertisement prescribed by the law differed from that required by contract, would be to extend or shorten the period after default within which a sale could be made; and by reason of the fact that the statute prescribes a day in each month on which such sales shall be made, this period may be extended for a longer time than the difference in time of advertisement prescribed by contract and the law."

A more striking illustration of the point now under consideration, that the degree of impairment is immaterial so long as there is any impairment, is afforded in the case of Thompson v. Cobb, 95 Tex. 147, 65 S. W. 1090, 1091 (93 Am. St. Rep. 820), which is based on the Hardy Case. The deed of trust in the Thompson Case provided, as in the deed of trust here involved, for the sale of the land "at any time after default." Subsequent to the execution of the contract, and before the sale occurred thereunder, the Legislature passed an act requiring all such sales to be made on first Tuesdays. The sale was, in fact, made on a Wednesday. The Supreme Court, speaking through Judge Williams, held the act invalid as to that contract, as, to give it effect, it would impair the obligation of that contract. It was said:

"Nor can it be held that the subsequent statute restricted the power of the trustee and required the sale to be made on the first Tuesday in the month. The effect of the statute upon deeds of trust executed before its enactment was considered in the case of the International Building & Loan Association v. Hardy, 86 Tex. 610. The deed there in question required a notice differing from that prescribed by the subsequently enacted statute, and the question was whether or not the statute so applied as to require the notice prescribed by it to be given. It would seem that both the statute and the deed could have been complied with, but it was held in effect that it was not in the power of the Legislature to take away the right of the parties created by the contract to have the property sold upon the terms and conditions and in the manner which they had agreed upon. The gist of that decision is that the parties, by their contract had acquired the right to have the property sold by complying with the provisions of the deed; that this constituted a part of the obligation of the contract which could not be impaired by subsequent legislation, and that the imposition of additional conditions upon the exercise of the right would be such an impairment. The principles there laid down control this case. By omitting to fix a day upon which the sale should be made and empowering the trustee to sell at any time, the parties gave him, as their common agent, a discretion to select a day when, in his judgment, the sale could be made to the best advantage of all concerned. Hess v. Dean,

66 Tex. 668. It was their right to have this done in accordance with their contract 'at any time' after default. The statute, if held to take away the power to make it at any other time than on the first Tuesday in the month, would not only add an additional condition, but would restrict the power defined in the deed and consequent rights of the parties to it."

Surely, then, if a statute requiring the sale to be made on a particular day of the month had the effect of impairing the obligation of a contract providing that the sale may be made "at any time after default," a statute requiring the sale to be made 5 years earlier than was required in a similar contract impaired the obligation of such contract. So in Goddard v. Reagan, supra, the same act was held invalid in so far as it required such sales to be made in the county in which the land was situated, as affecting a deed of trust providing that such sale should be made in another county than that in which the land was situated. To the same effect is the decision by this court in Chandler v. Peters, supra.

It must be kept in mind that the act of 1905 was not a permissive, but was a restrictive, act. It did not grant to the citizen a privilege, such as the use of the courts of the state; on the contrary, it operated to thereafter restrict the previously unfettered right of a creditor to pursue his contractual remedy until barred by the rule of stale demand. It did not declare to the citizen, "You may have your contractual remedy for 10 years, and no more;" it simply declared that his inherent right to pursue his contractual remedy must, as to future contracts, cease at the end of 10 years for the better repose of land titles. The parties here, then, were limited only by this restriction, and in this situation made their contract. They settled and expressed their respective rights and liabilities, and then selected their own method of enforcement, so as to avoid resort to the courts, and this became the obligation of the contract. Under the provisions of the contract the mortgagee was given the power of sale, which terminted only by the arbitrary restriction of the act of 1905. This power thus became a vested right in the mortgagee, and could not be impaired or otherwise affected by any subsequent act of the Legislature.

We hold, then that the act of 1913, in so far as it affects the period within which the power of sale created in the deed of trust here involved may be exercised, is void and of no effect for that purpose, and that under the agreed statement of facts the sale of the land involved to the State Bank & Trust Company was valid, and passed the title to said land to said company. Accordingly, the judgment of the trial court is reversed, and judgment is here rendered that appellant, the State Bank & Trust Company, recover of appellee, Aaron Frank, and of D. B. Chapin, the title and possession of the lands involved, with all costs.