## The International Building and Loan Association
v. William S. Hardy.

### No. 121.

**1. Trustee Sales.**

The Act of March 21, 1889 (chapter.118, Laws of Twenty-first Legislature), applies in terms " to all sales of real estate which may hereafter be made in this State under powers conferred by any deed of trust or other contract lien," and there can be no reasonable doubt of the intent of the Legislature to make it apply to sales made before its passage, as well as to those afterwards made. The act required such sales to be made in manner prescribed for sheriff sales ..................... 611·

**2. Obligation of Contract—Retroactive Law.**

A contract securing to a creditor a right to a specific remedy whereby he may enforce a pecuniary obligation without resort to the courts of the country, is not subject to such modifications and changes as may lawfully be made in the ordinary remedies prescribed by law ........ 612·

**3. Contract Remedies.**

That persons may contract for a remedy lawful in itself, but not given by law for the enforcement of a right, will not be questioned. But if a party desires to resort to a remedy existing only by contract, he must take it in accordance with the agreement that gives it; for the Legislature has no power to change the contract..................... 613·

**4. Same.**

It is obviously true that such remedies as rest on contract alone must be exercised as provided by the contract, or not at all; and it is equally clear that the Legislature has no power to change such a contract, and in its changed condition to make it obligatory on either party, simply because it has no power to make contracts for parties ............'........ 615

**5. Legislative Power over Remedies.**

While the Legislature has power to prescribe what process shall be used for enforcement of rights through the courts, and what notice of judicial sales shall be given, it certainly has no power to confer on any private person power to sell the property of another at such time and place and on such notice as it may prescribe, without regard to or in violation of any contract parties may have made ..................... 616

**6. Same—Case in Judgment.**

The Act of March 21, 1889, can not be given effect as to contracts executed before it was operative in cases in which the remedy therein prescribed differs from the remedy prescribed by contract. In this case the power to sell required ten days notice of sale, and was executed before the law went into effect ....................... ......... 617

Certified Question from Court of Civil Appeals for Fourth District, in an appeal from Bexar County.

*B. L. Aycock*, for appellant, cited: Const., art. 1, sec. 16; Gen. Laws 1889, p. 143; Ins. Co. v. Ray, 50 Texas, 511; Mellinger v. City of Houston, 68 Texas, 43; Railway v. Gross, 47 Texas, 435; De Cordova v. Gal-·

veston, 4 Texas, 470; Grigsby v. Peak, 57 Texas, 142; 3 Am. and Eng. Encycl. of Law, 757; Hedger v. Remaker, 3 Metc. (Ky.), 255; Jordan v. Peak, 38 Texas, 429; Goldfrank v. Young, 64 Texas, 432; Sturgis v. Crownshield, 12 Wheat., 257; Green v. Biddle, 8 Wheat., 84; Von Hoffman v. City of Quincy, 4 Wall., 552; Bank v. Sharp, 6 How., 327.

STAYTON, CHIEF JUSTICE.—The question certified and accompanying statement are:

"Plaintiff claims title to land in Bexar County under a deed of trust executed by appellee and wife on April 18, 1885, the sale by the trustee having taken place on October 9, 1890, in Bexar County, appellant being the purchaser. The trustee's deed was objected to when offered in evidence, on one ground only, viz., 'because there was no evidence that advertisement was made by posting notices of the time and place of sale as in sheriff's sales, in three public places in the county, one of which being the court house door;' which objection was sustained."

*Question.*—"Did the Act of March 21, 1889, entitled 'An act to prescribe the place and time of sale of all real estate thereafter to be sold under power conferred by any deed of trust or other lien,' have the effect of requiring compliance with its provisions in cases of sales thereafter made under a power, where the contract conferring the power had been executed prior to said act, and provided differently in respect to the sale?"

The act referred to requires such sales "to be made in the county in which such real estate is situated. Notice shall be given as now required in judicial sales, and such sales shall be made at public vendue, between the hours of 10 o'clock a. m. and 4 o'clock p. m. of the first Tuesday in any month."

The purpose of that act evidently was to make the law regulating time and place of sale under execution or other judicial process applicable to sales under powers conferred in mortgages, and to require notice of such sales to be given in the mode and for the period prescribed for notice of sales under judicial process.

The law in force when the contract was made, as at the time when the sale under the trust deed was made, required that "the time and place of making sale of real estate, in execution, shall be publicly advertised by the officer for at least twenty days successively next before the day of sale, by posting up written or printed notice thereof at three public places in the county, one of which shall be at the door of the court house of the county." Sayles' Civ. Stats., art. 2309.

The statute, however, gave a defendant the right, upon written request, to have notice of sale given by publication in some newspaper, if there was one published in the county, provided this could be had for the compensation fixed by the statute; and such publication was required for three consecutive weeks. Sayles' Civ. Stats., art. 2309a.

The Act of March 21, 1889, in terms applies to " *all sales of real estate which may hereafter be made in this State under powers conferred by any deed of trust or other contract lien,*" and there can be no reasonable doubt of the intent of the Legislature to make it apply to sales under contracts made before its passage as well as to those afterwards made; and the question arises whether such legislation is in violation of any part of the Constitution of the United States or of this State. If not, effect must be given to it in all cases coming within its terms.

The Constitution of the United States and the Constitution of this State deny to the Legislature of this State power to enact any law impairing the obligation of contract, and the latter withholds power to enact retroactive laws.

The purpose of the parties in making the mortgage contract, and in giving power to sell the mortgaged property in accordance with the terms of the instrument, were twofold.

The leading purpose of that contract was to give lien on the property described in it, to secure debt due or to become due from one party to the other; and if the contract had gone no further than to secure this right, there is no doubt that it would have been within the power of the Legislature to change the remedy then existing for the enforcement of such a right through the courts, in any respect that did not essentially affect the right secured.

Notice for a longer period before sale, or notice to be given in some manner other than that prescribed by law in force when the contract was made, might have been required, or the time and place of sale might have been changed, without violating the right of either party under the contract; for when parties contract with reference to the enforcement of rights through the courts, if this becomes necessary, they must be understood to contract in view of the fact that the State has power to establish courts, to fix their jurisdiction, and also to regulate procedure, and that this can not be controlled by contracts persons may make.

The contract, however, had in view and by its terms gave and was intended to give to the creditor a remedy through which it might enforce its right against the mortgaged property without resort to the ordinary remedies given by law; and it will now be assumed that the contract which gave that remedy was valid when made.

The constitutional provisions which forbid legislation the effect of which would be to impair the obligation of contracts affecting property or pecuniary rights, are broad and embrace every such contract; and on the case stated the question arises, Is a contract securing to a creditor right to a specific remedy, whereby he may enforce a pecuniary obligation without resort to the courts of the country, subject to such modifications and changes as may lawfully be made in the ordinary remedies prescribed by law?

We are of opinion that this should be answered in the negative; for as before said, the contract in the one case secures the right of the parties as to the subject matter of contract, but looks for remedy to laws existing or to such laws as may be subsequently enacted—in fact contract with reference to the known power of the law making department to make such changes in remedial laws as may be deemed beneficial, provided they be not such as impair the obligation of contracts; while in the other the very purpose of so much of the contract as secures a remedy the law does not give is to secure the specific remedy contracted for.

In one case the specific remedy is the subject of contract, and parties, one or both, thus secure it because deemed more advantageous in enforcement of right than the remedies provided by law; while in the other the thing or right secured by contract is that which gives right to some remedy for enforcement of contractual obligation; by reason of the right the remedy operates upon persons or things, and in the absence of contract for remedy in such cases, parties subject themselves and property to such remedies as exist at the time the contract is made, and to such as subsequently may lawfully be given by law.

That persons may contract for a remedy, lawful in itself, but not given by law for enforcement of a right, will not be questioned; but such a contract will not prevent resort to any remedy given by law.

If, however, a party desires to resort to a remedy existing only by contract, he must take it in accordance with the agreement that gives it; for the Legislature has no power by subsequent law to change the contract. The exercise of such a power would be, in effect, to make contracts for parties, which the Legislature has no power to do.

While this is true, there is no doubt that parties may contract with reference to an existing law affecting the remedy; but if the contract relates only to process and the manner of its execution, and not to something on which the process is to act, or like substantial thing, then the contract ought not to be held to affect the power of the Legislature to change the remedy.

It has been held, that a change in the law in such cases, if given effect, would not necessarily impair the obligation of contract.

A statute in New York authorized sales of mortgaged property under a power conferred by the mortgage, upon notice being given for twenty-four weeks; and while that law was in force a mortgage was executed which authorized a sale under a power "according to law;" but before the sale the law was so changed as to authorize such sales to be made on notice given for twelve weeks.

A sale made under the last law was held to be valid, on the ground that the words "according to law" meant in compliance with the law in force when the sale became necessary. James v. Stull, 9 Barb., 482.

It was, however, held that the sale was valid, if such was not the true

construction of the contract, on the ground that the Legislature had power to change the remedy, and that such a change as was made did not impair the obligation of the contract.

In support of the last proposition, quoting from Bronson v. Kinzie, 1 Howard, 311, it was said: "If the laws of the State had done nothing more than change the remedy upon contracts of this description, they would be liable to no constitutional objection. For undoubtedly a State may regulate at pleasure the modes of proceeding in its courts in relation to past contracts, as well as future."

Under the construction given to the contract, the decision may not be subject to objection; for it seems reasonable, when parties do not expressly fix the terms on which such powers may be exercised, but agree that the act to be done in the future may be done according to the law governing that subject, that they consent to be governed by the law in force when, under the terms of the contract, it may become necessary to exercise the power. They contract with the knowledge that the Legislature may change the remedy, and ought not to be presumed to have intended, in case of such change, that the contract should become inoperative.

It seems to us that the decision in Bronson v. Kinzie does not give support to the ruling it was cited to sustain.

In that case it appears that a mortgagor executed a mortgage which authorized the mortgagee to take possession of and sell the mortgaged property, and title to convey to the purchaser, on default of payment of principal or interest; but instead of pursuing that remedy, as he might lawfully have done, he brought a suit to foreclose. It was contended, that under a law passed subsequently to the execution of the mortgage, the property could not be sold unless it brought two-thirds of its appraised value, and that it should be sold subject to the mortgagor's right to redeem within twelve months. The law in force when the mortgage was executed, as well as the contract, gave right to make sale absolute, and without reference to appraisement. The court simply held, that to give effect to the subsequent law would impair the obligation of the contract.

The case of Conkey v. Hart, 14 New York, 22, is frequently cited as authority for the proposition that the Legislature may pass laws which will annul right to remedy given by express contract. In that case Wardell had given a chattel mortgage, which provided that he should remain in possession of the mortgaged property, "unless he or some other person or persons shall attempt to sell, secrete, remove, or otherwise dispose of the said chattels in any way whatever; then or in such case it shall and may be lawful for the parties of the second part, their heirs, etc., to take immediate possession of said chattels, and keep the same until default be made as aforesaid, and then to sell and dispose thereof."

Subsequently, Wardell leased land from Simpson, and the contract provided, that if Wardell "shall fail to pay said rent, or any part thereof,

when it becomes due, it is agreed that the said party of the first part may distrain or sue for the same, and re-enter said premises, or resort to any other legal remedy; and in case of distress for nonpayment under this lease, the said party of the second part hereby consents and agrees that any property upon said premises, not excepting such articles as are by law exempt from distress, may be taken to satisfy the rent in arrear.''

Wardell having failed to pay rent due, Simpson sued out a distress warrant, under which he caused the mortgaged property to be seized by the sheriff, whereupon the mortgagor brought replevin against him.

After the mortgage and lease were executed, a law was passed which abolished distress for rent, and the contract for remedy by distress was relied upon to defeat the action of replevin.

While recognizing the fact that the waiver of exemption was the substantial matter the parties had in view in making the contract, the court held that the subsequent law took away the remedy of distress which the lessee contracted might be used.

The lease contract gave right to no remedy which would not have existed without it; and it may be true that it might properly have been held that the parties only intended that all such remedies as were lawful at time of default might be used.

The remedy contracted for was not one that could exist by contract. It could only exist by reason of a law, and it is clear that no person, by contract or otherwise, can prevent the law making power from repealing the law which permits the use of given process, while it would not have power to deny remedy for the full enforcement of obligation imposed by contract.

It is obviously true that such remedies as rest on contract alone must be exercised as provided by the contract, or not at all; and it is equally clear that the Legislature has no power to change such a contract, and in its changed condition to make it obligatory on either party, simply because it has no power to make contracts for parties.

In a case in which a trustee in a mortgage, which gave power to sell the mortgaged property in manner and on terms prescribed by the instrument, was sought to be enjoined by the debtor on account of legislation subsequent to the contract, it was aptly said: "The deed established all the agencies for the execution of the trust. Unlike a mortgage, it contemplated no day in court for foreclosure or redemption, nor sale under the direction and terms of the court, and by its officers. But its design was to avoid the processes of the law, and to confide to impartial agents summary means of realizing the objects of the trust. Had the parties, by the nature of their agreement, as in case of mortgage, been thrown upon the courts for redress, they might have been amenable to the control which the Legislature possesses over judicial remedies. * * * Shall it be said that a sale is a remedy that may be likened to legal process, and

as such liable to be changed and modified by the Legislature? If so, there is at least this material difference, that is a *remedy* of the parties' own appointment, and the very essence of his contract. It can not be segregated from it and treated as an extrinsic remedy within the pale of legislative jurisdiction. * * * To admit a subsequent act of the Legislature thus to modify and essentially vary the written stipulations of the parties, would concede to the Legislature a power to make a new contract and destroy the old altogether—a power not assumed by the letter of the act itself, for it only professes to operate on general remedies." Taylor v. Stearns, 18 Gratt., 244.

The rule is well stated by the Supreme Court of Pennsylvania: " But a statute strictly remedial may impair the obligation of a contract; and when this happens the act is unconstitutional. Bronson v. Kinzie, 1 How., 322. This always happens where the parties make legal remedies a subject of their contract, and subsequent legislation conflicts with what they have expressed in their agreement. If they do not prescribe the rule of remedy in their contract, the law making power is free; but if they do, they become a law to themselves, and the Legislature must let them alone. Stay laws, exemption laws, and limitation laws are ordinarily constitutional, although applied to existing and prior contracts; but the cases in which such laws have been sustained have been cases in which the parties have not contracted about the subject matter to which the laws were applicable. * * * If the thing provided for by the Legislature be within their general competence, and yet be the very thing expressly excluded by a particular contract, it is plain that as to the parties to that contract, the law is unconstitutional and void, because it impairs the obligation of their contract." Bellmeyer v. Evans, 40 Pa. St., 327.

To the same effect are the following decisions: Breitenback v. Bush, 44 Pa. St., 318; Lewis v. Lewis, 47 Pa. St., 127; Pool v. Young, 7 Monroe, 588; Boice v. Boice, 27 Minn., 373; O'Brien v. Krenz, 36 Minn., 138.

It appears that under the contract notice of sale was required to be given by advertisement in a daily paper of the city for ten days prior to sale day, and in entering into that contract the parties must be supposed to have determined for themselves that such notice would be more beneficial to them than notice given in some other manner.

They were equally interested in that matter, and it is certainly true that power had not been given to make the sale under any other mode of advertisement. What notice of the sale should be given was matter of contract.

Had the Legislature jurisdiction to declare that the power to sell should exist, and might be exercised if notice of sale was given in some other manner than that prescribed by the contract?

While the Legislature has power to prescribe what process shall be used for enforcement of rights through the courts, and what notice of judicial sales shall be given, it certainly has no power to confer on any private

person power to sell the property of another at such time and place and on such notice as it may prescribe, without regard to or in violation of any contract parties may have made.

If the law requiring notice to be given as in sales under execution, is to operate on contracts made before its enactment, this necessarily annuls the power based solely on contract; for neither of the parties agreed that the power might be exercised at all, unless notice was given as the contract required.

The contract only permitting the power to be exercised on terms prescribed, impliedly forbade the trustee to sell unless notice was given as it required; and if the subsequent law is to have effect, the power to sell under its terms is a power existing only by force of the law, for the parties did not confer it.

The necessary effect of the law, when the period for advertisement prescribed by the law differed from that required by contract, would be to extend or shorten the period after default within which a sale could be made; and by reason of the fact that the statute prescribes a day in each month on which such sales shall be made, this period may be extended for a longer time than the difference in time of advertisement prescribed by contract and the law.

When parties, looking to all the facts bearing on their respective interests, make a contract whereby specific remedy, not given by law, is secured for enforcement of rights, courts ought not to inquire as to the extent of injury which may result if a law subsequently enacted, and effecting the remedy, be given effect; for such legislation impairs the obligation of contract, takes away vested rights, and is therefore prohibited by the Constitution.

The Act of March 21, 1889, can not be given effect as to contracts executed before it was operative in cases in which the remedy therein prescribed differs from the remedy prescribed by contract.

Delivered April 19, 1894.