## ÆTNA CASUALTY & SURETY CO. v. WOODWARD et al.

### No. 918.

Court of Civil Appeals of Texas. Waco.

June 12, 1930.

Rehearing Denied Oct. 23, 1930.

Harry P. Lawther and H. B. Sanders, both of Dallas, for appellant.

Wynne & Wynne and Bishop & Holland, all of Athens, and Leffingwell & Dixon and M. S. Church, all of Dallas, for appellees.

STANFORD, J.

This suit was originally filed by I. L. Woodward and O. T. Woodward, as plaintiffs, on January 25, 1928, who filed their second amended petition on August 30, 1928, complaining of C. W. McBride, the Malakoff independent school district, Ætna Casualty & Surety Company, First National Bank of Malakoff, and all interveners who should come into the suit. Plaintiffs alleged they had furnished C. W. McBride, contractor, material and labor to construct a school building for the Malakoff independent school district, and the bonding company had bonded said contractor; that the First National Bank of Malakoff held certain funds belonging to said district, in which plaintiffs and others who furnished labor and material were interested. On January 9, 1929, intervener Dallas Plumbing Company filed its first amended plea in intervention and cross-action. The plumbing company sought judgment against C. W. McBride for $5,563.25 upon the ground it had furnished him labor and material in the construction of the Malakoff High School building, under the terms of a contract with him. Against the surety company the plumbing company sought judgment upon the ground that the said surety company had bonded McBride for the school district, and that this bond inured to the benefit of the plumbing company. Against the Malakoff independent school district the plumbing company asked judgment on the ground that McBride had assigned to the plumbing company certain moneys belonging to him by the school district, which assignment the school district had accepted, but refused to pay over the money. Against the First National Bank of Malakoff the plumbing company asked judgment because its assignment from McBride gave it a prior lien on the money held by the bank, which was money held out on McBride's contract.

The bonding company answered by plea in abatement and a denial of liability on its bond because certain provisions of the statute had not been complied with, and in a cross-bill sought to recover the retainage in the possession of the district. The Malakoff Fuel Company, Texas Clay Products Company, Central Texas Iron Works, Strawn Lumber Company, George Griddle, Jet Crawford, and R. I. Wier all intervened and sought recovery against the contractor and bonding company upon the ground they had furnished labor and material for the construction of said building.

One special issue was submitted and answered by the jury, to the effect that the evidence does not show that the supervisor, W. D. Puterbaugh, approved and the trustees paid to the contractor, C. W. McBride, more than 80 per cent. of the amount of labor and material which were used by him in the construction of the school building in question. The judgment entered by the court awarded judgment to the plumbing company against McBride and the casualty company for $5,563.25, and declared same a first and prior lien to claims of all other parties, and in favor of the plaintiffs and interveners, other than the plumbing company, pro rata for the remainder of the funds tendered into court by the school district through the First National Bank of Malakoff. The casualty company alone has appealed and assigned error.

Under its first assignment of error appellant contends the court erred in overruling its plea in abatement. The proposition asserted under this assignment is that the remedy invoked by the original plaintiffs, I. L.

and O. T. Woodward, being a statutory remedy, it was jurisdictional that the statutory requirements be complied with, and that no suit could be instituted by the interveners unless the municipality, within the six months allowed by law, had failed or refused to file suit on the bond. We think the record clearly shows that the plea in abatement was filed during the August term, 1928, but was not determined until the February term, 1929. No explanation appears in the record as to why the court failed to act on the plea during the term at which it was filed. This being true, it was waived as a matter of law; and if the court erred in overruling it on the other grounds, such was harmless error. Article 2013, Revised Civil Statutes; District Court Rule No. 24 (142 S. W. xix); Texas Packing Co. v. St. Louis S. W. Ry. Co. (Tex. Com. App.) 227 S. W. 1095; Texas Packing Co. v. St. L. S. W. Ry. Co. (Tex. Civ. App.) 204 S. W. 120; McCoy v. Bankers' Trust Co. (Tex. Civ. App.) 200 S. W. 1138.

■■ Further, we think, article 5161 of the Revised Statutes does not forbid a creditor to sue in less than six months after completion and final settlement, but only provides that, if the municipality does not sue within that time, the creditor may demand and receive a certified copy of the bond, which he may use as a basis of a suit himself. Prior to six months time he has no right to demand a certified copy of the bond. The proviso in article 5162, we think, is controlling in this case, which is as follows: "Provided that if the contractor quits or abandons the contract before its consummation, suit may be instituted by any of such creditors on the bond of the contractor, and shall be commenced within one year after abandonment of said contract and not later."

In this case the contract was abandoned by McBride, the contractor, on December 27, 1927. The suit was filed January 25, 1928. See articles 5161, 5162, and 5164 of our Revised Statutes. As a matter of fact, the school district, in effect, filed suit on July 10, 1928, when it filed its first amended original answer and asked for citation by publication so as to bring all creditors into the suit, as provided by article 5164. This citation by publication was afterwards completed. Appellant's contentions discussed above are overruled.

■ Under its second and fourth assignments and propositions thereunder, appellant contends, in substance: the intervening creditors being laborers and materialmen, entitled to the benefits of the bond only by virtue of statutory provisions, it was a condition precedent that they plead and prove compliance with statutory requirements as to filing sworn itemized notice of unpaid claims with the contractor or the county clerk within thirty days after the delivery of the material or the accrual of the claims, as provided by article 5160

(Rev. St. 1925), as amended. The exact question here involved arose as follows: The contract and bond upon which those who furnished the labor and material seek to hold appellant liable was executed August 5, 1927, in compliance with the provisions of article 5160 as it then was. The 40th Legislature, 1st called Sess., C. 39 (Vernon's Ann. Civ. St. Art. 5160 note) amended article 5160 by adding the following: "And provided further that all claims for labor shall be itemized and sworn to by the owner or his authorized agent and filed with the contractor or with the county clerk of the county in which said work is being prosecuted within thirty days from the date that said claim accrued and became payable, and all claims for material shall be itemized and sworn to by the owner or his authorized agent and filed with the contractor or with the county clerk of the county in which said work is being prosecuted within thirty days from the date of the delivery of said materials; and any claim filed after said thirty days shall not be secured by said bond." Said amendment became effective September 6, 1927, about a month after the execution of the bond and contract made the basis of this suit. So the question here involved is, Was it necessary, in order for appellees to recover, for them to plead and prove that they had complied with the provisions of said article of the statutes, as amended, with reference to furnishing itemized statements of labor and material, sworn to by the owner or his agent and filed with the contractor, or the county clerk, within thirty days from the date that said claims accrued and became payable, etc.

Article 5160, passed by the Legislature in 1913 (Acts 1913, P. 185), conferred a right not before enjoyed by persons furnishing labor and material for the construction of a public building. It secured payment of their claims by requiring a bond to be furnished by the contractor, which bond inured to their benefit. The right of security thus conferred vested at once upon the execution of the contract and bond. It was not conditioned upon the materialmen or laborers filing an itemized sworn statement within a certain time, but such right became an unqualified vested right in the persons furnishing labor or material, and of the same date as the date of said contract and bond. The effect of the amendment of 1927 was to make the right conditional. Instead of a right vesting at once, it became a right only when and if certain additional things were done by those seeking its benefits. To give effect to the amendment, in this case, the valuable right of present security created by the contract of the parties under the law as it was prior to the amendment would be postponed to the time when itemized sworn statements were filed, and such rights would be absolutely denied to all persons failing to file such statements. When did the obligation under the bond, contract, and applicable statute in this case arise? The bond

was executed for the purpose of obligating the appellant to secure the laborers and materialmen for labor and material to be thereafter furnished. This security—this promise to pay—had been contracted for prior to the amendment. The laborers and materialmen then had the right to thereafter furnish the labor and material and rely upon the bond. They were required to do no more. If the amendment deprives them of this right and relieves the appellant of its obligation to perform its promise by requiring the laborers and materialmen to do something which under the contract they were not required to do, it impairs the contract, it affects the obligation, whether or not it be termed a remedy. Trinity Cement Company v. Lion Bonding Co. (Tex. Com. App.) 229 S. W. 483, 484. See also: Van Zandt Co. v. Independent School District (Tex. Civ. App.) 283 S. W. 626; Smith v. Fidelity & Deposit Co. (Tex. Com. App.) 280 S. W. 767; U. S. Fidelity Co. v. Burton Lbr. Co. (Tex. Civ. App.) 221 S. W. 699 (writ refused); In the case first above cited the court says: "Article 6394f, V. S. R. S., provides in substance that every contractor on any kind of public work shall be required before beginning such work to execute the 'usual penal bond' with the additional obligation that such contractor or contractors shall promptly make payment to all persons supplying him or them with labor and material in the prosecution of the work, etc." And in said case the court, in referring to the obligation of the surety, says: "It was a legal statutory obligation, the plain meaning of which is that, if the contractor either failed to build the bridges according to contract, or failed to pay the laborers who did the work or the materialmen who furnished material, the surety would do so." The obligation then arose when the contract and bond were executed, and arose by virtue of the statute then in effect, and legislation thereafter which would affect this obligation is by the Constitution of both the state and nation prohibited. We do not think the provisions of said amendment applicable to the contract made the basis of this suit, and so it was not necessary for the interveners to comply with the provisions of said amendment. Article 5160, Revised Statutes; Cathey v. Weaver, 111 Tex. 515, 242 S. W. 447; Farmers' Life Ins. Co. v. Walters (Tex. Com. App.) 10 S.W.(2d) 698; Lyon & Matthews Co. v. Praetorians (Tex. Civ. App.) 142 S. W. 29; National Surety Co. v. Decorating Co., 226 U. S. 276, 33 S. Ct. 17, 57 L. Ed. 221; Ruecking Const. Co. v. Withnell, 269 Mo. 546, 191 S. W. 685; Withnell v. Ruecking Const. Co., 249 U. S. 63, 39 S. Ct. 200, 63 L. Ed. 479; Thompson's Executor v. Cobb, 95 Tex. 140, 65 S. W. 1090, 93 Am. St. Rep. 820; Loan Association v. Hardy, 86 Tex. 610, 26 S. W. 497, 24 L. R. A. 284, 40 Am. St. Rep. 870; Bradley v. Lightcap, 195 U. S. 1, 24 S. Ct. 748, 49 L. Ed. 65; Frank v. State Bank, etc. (Tex. Com. App.) 263 S. W. 255. We overrule appellant's contentions here discussed.

However, if we should be in error in the above holding, as the record shows that the intervener Dallas Plumbing Company did comply with the provisions of article 5160, as amended (Vernon's Ann. Civ. St. art. 5160), by filing with the contractor McBride sworn itemized claims for all unpaid labor and material as provided by the amendment, appellant's contention as to said intervener should be, and is, in any event, overruled.

Under its nineteenth assignment and propositions, appellant contends, in effect, that the finding of the jury to special issue submitted was not supported by the evidence. This issue was: "Does the evidence show that the supervisor, W. D. Puterbaugh, approved and the trustees paid to the contractor, C. W. McBride, more than eighty per cent. of the amount of labor and material which were used by him in the construction of the school building in question?" To which the jury answered: "No." We have carefully read and considered all the evidence bearing upon this special issue submitted to the jury, and we think the evidence is sufficient to sustain its finding. So appellant showed no right to recover on its cross-bill against the Malakoff independent school district.

We have considered all of appellant's assignments, and, finding no reversible error, overrule same. The judgment of the trial court is affirmed.