## GLENN v. JONES et al.
### No. 4312.

Court of Civil Appeals of Texas. Amarillo.
June 18, 1934.

Critz & Woodward, of Coleman, and John B. Daniel, of Temple, for appellant.

T. Wade Potter, of Littlefield, for appellees.

HALL, Chief Justice.

Otto and Arthur Jones, partners engaged in the hardware and implement business in Littlefield, Tex., brought this suit against Glenn, as receiver of the Temple Trust Company, under the provisions of Senate Bill No. 3, Acts of the 43d Legislature (Second Called Sess.), page 42, chapter 16 (Vernon's Ann. Civ. St. art. 3804 note) making the sheriff of Lamb county a party defendant, for the purpose of enjoining the sale under execution of certain property which plaintiffs alleged they owned in the town of Littlefield.

They allege, in substance, that on December 6, 1933, an order of sale was issued out of the district court of Bell county, based upon a judgment in favor of Glenn as receiver of the Temple Trust Company against them, commanding Len Irvin as sheriff of Lamb county to seize and sell all of lots 11 and 12 in block 31 of the original town of Littlefield, in satisfaction of said judgment, amounting to $5,170.80, together with costs of suit. They

allege that the property had been advertised for sale on the first Tuesday in March, 1934. It is further alleged that two brick and tile buildings had been erected by them upon the lots situated on the principal business street in Littlefield; that they had invested $13,000 in the property, and under normal business conditions it would be worth $15,000; that, due to financial conditions in the United States and in Lamb county, the property had no market value whatever, but had an intrinsic value of not less than $15,000; that after the erection of the improvements on said lots they obtained a loan from the Temple Trust Company of $5,500, dated January 1, 1931, for which they executed their notes secured by a deed of trust on the property. They further alleged all the essential facts required by section 1 of the Moratorium Act which if true would entitle them, if said law is constitutional, to a postponement of the sale under the said execution until February 1, 1935.

Upon presentation of the petition to the district judge on March 6, 1934, a temporary restraining order was granted, and the matter was set for hearing at Tulia on March 22, 1934. By his fiat the judge required the filing of a bond in the sum of $300, which was executed and approved.

On March 22d the receiver filed his motion to dissolve the injunction and temporary restraining order attacking the validity of the law because of its alleged unconstitutionality, and also filed an answer consisting of a general demurrer and general denial.

Upon a hearing the judge decreed that the injunction should be continued until February 1, 1935, and the defendants were ordered to refrain from executing said judgment until said last-named date. It was further ordered that the plaintiffs pay to the clerk of the court $50 per month, beginning April 1, 1934, which sum the clerk was required to pay to Glenn as receiver or to his duly authorized agent.

By the first assignment the trust company insists that the district judge was without jurisdiction because the action was against a receiver appointed by the United States District Court and brought without leave of the court to file such suit.

The receiver had introduced in evidence a decree of the District Court of the United States sitting at Waco in the case of J. M. Hubbert v. Temple Trust Company, dated March 10, 1933, appointing Glenn receiver of the trust company and defining his duties. He also introduced a petition by him as receiver of the trust company, in the district court of Bell county against Otto Jones and wife, Lena, and Arthur Jones and wife, Leone, filed April 6, 1933, alleging the appointment of said receiver and praying for a judgment against the defendants upon a principal note in the sum of $5,500, payable in monthly installments, with interest at 9¾ per cent. per annum and the provision for attorney's fees; also praying for a foreclosure of its mortgage lien on the above-described property. The judgment rendered in said suit was also introduced in evidence.

Without entering into an extended discussion of the point, we strongly incline to the opinion that, before the appellees could institute this proceeding, they must have obtained permission of the federal court, since the action is not one which comes within the provisions of title 28, USCA § 125. Field v. K. C. Refining Co. (C. C. A.) 9 F.(2d) 213.

The next contention to be considered is that the appellees have not by their proof shown themselves entitled to the advantages afforded by the Moratorium Act.

This act is in derogation of the common law, and is a special emergency act which under ordinary financial conditions must necessarily be declared to be unconstitutional upon several grounds. See Glenn v. Hollums (Tex. Civ. App.) 73 S.W.(2d) 1068, this day decided. All rights, if any, to which the appellees are entitled in this action exist solely in virtue of the moratorium statute, and, as said by Chief Justice Cureton in Mingus v. Wadley, 115 Tex. 551, 285 S. W. 1084, 1087: "The general rule is that where the cause of action and remedy for its enforcement are derived not from the common law but from the statute, the statutory provisions are mandatory and exclusive and must be complied with in all respects or the action is not maintainable. * * * The rule is well settled in most jurisdictions and in this state 'that there is no presumption of jurisdiction where a court, although it is one of general jurisdiction, exercises special statutory powers in a special statutory manner or otherwise than according to the course of the common law, since under such circumstances the court stands with reference to the special power exercised on the same footing with courts of limited and inferior jurisdiction.'"

Judge Cureton further holds that in such cases he who claims any right or benefit under such a statute must affirmatively show the court's jurisdiction in the premises by alleging and proving the same.

The act in question requires the par-

ty seeking its benefit to allege and prove certain facts as a condition precedent to the granting of any relief by the district judge. The appellant does not challenge the sufficiency of the allegations, but insists that the appellees have utterly failed to show by their evidence that they were entitled to the relief sought, and this contention must be sustained. The judgment was against both Otto and Arthur Jones, and the statement of facts shows that they were partners. As a matter of law they were individually and jointly liable for the amount of the judgment. Otto Jones alone testified, and, even if his evidence was sufficient to bring him within the provisions of the law, it does not appear that his brother is entitled to the relief which the judgment decrees to both. Subdivision (b) under section 1 of the act provides that the relators shall allege and show that a sale of the incumbered property seized under execution would result in an unfair, unjust, and inequitable financial loss to the relators and would not be unfair, unjust, and inequitable to the creditor, taking into consideration the financial condition of all the parties. It may be admitted that Otto Jones' testimony is sufficient to show that it would result in a financial loss to him, but there is no testimony which even tends to show that the granting of the injunction would not be unfair, unjust, and inequitable to the trust company when its financial condition is taken into consideration. The record discloses that the trust company is in the hands of a receiver on account of the fact that it was unable to meet its obligations. We must reasonably assume that its creditors are insisting upon the payment of their claims. Because it is in the process of liquidation it is certainly to the advantage of the company to realize upon its securities at the earliest possible date. The act in question further requires the relators to allege and prove that they will not permit the property to be abused, ill-treated, or mismanaged, and to show that such property will be managed, controlled, and cared for properly during the pendency of the suit. While the testimony of Otto Jones is sufficient to meet this requirement, Arthur Jones has not been heard from in relation thereto, and the court acted, in so far as he is concerned, without any testimony.

Subdivision (f), section 1, of the act requires that it shall be alleged and shown that there is a reasonable expectation that the indebtedness will be materially reduced, or that a substantial amount thereof will be refinanced within a reasonable time. The only evidence upon this point comes from Otto Jones, and appears in the statement of facts as follows:

"Q. I will ask you whether or not you think that between now and Feb. 1st you might be in position to pay off this judgment. A. A good substantial part of it anyway.

"Q. And you have expectations that you could pay a good substantial part of it between now and that time? A. Yes, sir."

In other words, Otto Jones testified that he thought that between that time and February 1st he might be in position to pay a good substantial part of the judgment and that he had expectations to that effect. He stated no facts from which the court could conclude that his expectations were "reasonable," nor does he show whether the amount he expected he would be able to pay would materially reduce the indebtedness and to what extent. He did testify that his firm had been doing more business than formerly; that they had no money but did have some notes. He does not give the amount of the notes nor the extent of the improvement in their business, nor does he show that he had authority from his partner to apply the notes or the proceeds thereof upon the indebtedness. He does not promise to do so, nor does he tender them into court. We think this testimony is wholly insufficient, even upon this issue, to sustain the order of the court postponing a valuable right for nearly a year. In the face of his testimony admitting that he had no money at that time, that he was several years behind in the payment of taxes, that he was in arrears in the payment of interest and insurance, the court should not have stayed the execution upon such uncertain and indefinite statements and promises, even though both partners had made them.

There are several other contentions which challenge the authority of one court to enjoin the execution of the judgment rendered in a court of co-ordinate jurisdiction.

In Cleveland v. Ward, 116 Tex. 1, 285 S. W. 1063, Judge Cureton, in an exhaustive and extended review of the authorities, held that the jurisdiction of a court once acquired cannot be destroyed, diminished, or suspended by any one of the parties bringing an action in another court, and any judgment or order of the latter court would be void in so far as it conflicted with any judgment or order of the court first acquiring jurisdiction; that an injunction granted by a judge of one district court was void in so far as it attempted to enjoin a judge of another district court of co-ordinate power and jurisdiction. The ex-

press holding is that, jurisdiction having attached on filing of a suit in one district court, it could not be taken away or arrested by subsequent proceedings in another court, but that the court first acquiring jurisdiction had the right to exercise it and dispose of the whole subject-matter of litigation and to adjust all equities between the parties.

Of course, the effect of the Moratorium Act was not involved in that case, and, while our Supreme Court has not directly passed upon the question, the Supreme Court of the United States, in the case of Home Building & Loan Association v. Blaisdell, 290 U. S. 398, 54 S. Ct. 231, 78 L. Ed. 413, 88 A. L. R. 1481, has upheld the Moratorium Law of Minnesota, which is practically the same in its provisions as the act involved in this case.

The appellant, however, insists that the established rule is that the remedy as it existed for the enforcement of contracts and which existed at the time the contract was made enters into and becomes a part of the contractual right and cannot be impaired by subsequent legislation, citing numerous authorities, principally cases decided by the Supreme Court of the United States, in support of the contention, and further cites Mellinger v. City of Houston, 68 Tex. 37, 3 S. W. 249; Coffee v. Castleberry (Tex. Civ. App.) 258 S. W. 889; State v. G. H. & S. A. Ry. Co., 100 Tex. 153, 97 S. W. 71; Standifer v. Wilson, 93 Tex. 232, 54 S. W. 898; Womble v. Shirley (Tex. Civ. App.) 193 S. W. 719; International Building & Loan Association v. Hardy, 86 Tex. 610, 26 S. W. 497, 24 L. R. A. 284, 40 Am. St. Rep. 870. These cases bear upon the right of the Legislature to encroach upon the judiciary and by retroactive laws in effect annul judgments previously rendered.

In discussing the governmental powers and functions of the separate departments of government, and especially the relation existing between the legislative and judicial departments, it is said that the courts have the inherent right to determine what the law is and what the rights of the parties are with reference to transactions already had, while the Legislature prescribes what the law shall be in future cases arising under it. It is held:

"Wherever an act undertakes to determine a question of right or obligation, or of property, as the foundation upon which it proceeds, such act is to that extent a judicial one, and not the proper exercise of legislative functions." U. P. R. Co. v. U. S., 99 U. S. 700, 761, 25 L. Ed. 496.

"In fine, the law is applied by the one, and made by the other. To do the first, therefore, to compare the claims of parties with the laws of the land before established, is in its nature a judicial act. But to do the last, to pass new rules for the regulation of new controversies, is in its nature, a legislative act; and if these rules interfere with the past or the present, and do not look wholly to the future, they violate the definition of the law, 'as a rule of civil conduct'; because no rule of conduct can with consistency operate upon what occurred before the rule itself was promulgated." Merrill v. Sherburne, 1 N. H. 199, 8 Am. Dec. 52.

In the Mellinger, Coffee, and State v. G. H. & S. A. Ry. Co. Cases, supra, it is held that the constitutional inhibition against the enactment of retroactive laws is absolute, and, if the rule announced in such cases is to be applied, the judgment of the district court of Bell county could not be disturbed, modified, or suspended by any subsequent legislative proceeding, and we shall so hold until the Supreme Court of this state has authoritatively passed upon the question.

The principal defect in the judgment rendered by the trial judge is that the evidence is insufficient to support his conclusions. Because permission may be obtained for instituting the suit, and because the evidence may be introduced upon another trial to sustain the allegations in the petition, and for the further reason that the constitutional questions urged on this appeal which go to the validity of the Moratorium Act have not yet been clearly and definitely settled by our Supreme Court, we have concluded that the proper disposition to make of the appeal is to reverse the judgment, dissolve the injunction, and remand the cause for further proceedings.

Reversed and remanded.