**CATTLE RAISERS LOAN CO. et al. v. DOAN et al.**

No. 1574.

Court of Civil Appeals of Texas. Eastland.

July 12, 1935.

Rehearing Denied Sept. 20, 1935.

R. M. Rowland and S. C. Rowe, all of Fort Worth, and Leon L. Mott, of Houston, for appellants.

W. H. Penix, of Mineral Wells, for appellees.

GRISSOM, Justice.

On December 18, 1934, John Doan executed a note for $18,230.72, payable to the order of Cattle Raisers Loan Company at Fort Worth, Tarrant county, Tex., due April 1, 1935. The payment of the note was secured by a chattel mortgage lien on cattle, and a deed of trust executed by John and J. B. B. Doan on land located in Palo Pinto county, Tex. This note was executed in renewal of prior notes executed by John Doan to the Cattle Raisers Loan Company, the said deed of trust having been executed to secure a prior note and reciting it was to include all renewals and extensions of said note. John Doan failed to pay the note on its due date, April 1, 1935, and Cattle Raisers Loan Company, on April 2, 1935, filed its suit in the district court of Tarrant county against John Doan on said note and for a foreclosure of its mortgage and deed of trust liens. It alleged that the note before its maturity was transferred by Cattle Raisers Loan Company to Federal Intermediate Credit Bank of Houston by the loan company's indorsement, with recourse, and that the loan company brought the suit at the request of said bank and for the use and benefit of said bank as well as its own. On the day the suit was filed citation was issued, and was delivered to the sheriff of Palo Pinto county on April 3, 1935, and executed by him by service on John Doan on April 13, 1935.

On April 12, John Doan and J. B. B. Doan filed this suit in the district court of Palo Pinto county, alleging that they were the owners of the land described in the deed of trust, and the personal property described in the chattel mortgage heretofore mentioned, and of certain other property not so described. They alleged in detail their assets and liabilities; that their assets exceeded their liabilities; that their assets were frozen; that the property mortgaged could not then be sold for its fair value; that they were employers of labor, and alleged other facts that brought them distinctly within the provisions of Vernon's Ann. Civ. St. art. 2320—a (section 1 of Acts 1934, 43rd Leg. 3rd Called Sess., S. B. No. 11, c. 24, which became effective 90 days after September 25, 1934, the date of adjournment of the Legislature), and prayed for the relief authorized by said article.

On the day this suit was filed, the District Court of Palo Pinto county entered its order under said article granting the prayer in appellees' petition, and decreed that said court should thereafter have "exclusive jurisdiction of the debtors and their property as provided by law," and appointed John Doan, one of the appellees, and O. H. McClure custodians of the property of John Doan and J. B. B. Doan, and directed such custodians to take charge of and manage said property and seek purchasers for such property, real and personal, as ought to be sold, and apply to the court for orders to sell same. The custodians were directed to lease the farms of appellees "from year to year" as they thought best, to apply to the court for certificates of indebtedness when required, to carry on the ranch and farm business of appellees, and to employ such help as might be needed in the business, etc. By the judgment, appellants, their officers, attorneys, agents, and employees, and all persons and companies interested in the debts of appellees, were enjoined from prosecuting the Fort Worth suit, and "from bringing any other * * * suits against said debtors to collect its debt," and enjoined such persons from attempting to foreclose its chattel mortgage and deed of trust liens, and any lien against the land and cattle of appellees, and from selling same by trustee's sale, or in any manner. The judgment recited that the court had assumed the possession and charge of the

properties of appellees for the purpose of carrying out the provisions of Vernon's Ann. Civ. St. art. 2320—a, and recited that it would make additional orders for such purposes when necessary, and directed all creditors to file their claims of indebtedness against the appellees in said court within six months.

The appellants filed their answer, alleging the court was without jurisdiction to grant the relief prayed for, and that said article 2320—a, denominated an "Act for the Reorganization of Distressed Debtors" was unconstitutional and void. They moved the court to dissolve the temporary injunction and vacate the receivership, which motions were, upon a hearing, by the court denied. Appellants (Cattle Raisers Loan Company and Federal Intermediate Credit Bank of Houston) duly excepted, gave notice of appeal, and perfected their appeal to this court, and their motion filed herein to advance this case was on the 26th day of June, 1935, granted.

We are of the opinion that the judgment entered by the trial court was authorized by the article in question, and the only question for determination is whether or not the statute is valid.

Appellants contend that the statute is unconstitutional and void for many reasons, one being because it impairs the obligation of contracts, and thereby violates article 1, § 16, of the Constitution of Texas.

It is the position of appellees that the act is merely an enlargement of our Assignment and Receivership Laws, that it is not in conflict with either the Constitution of Texas or the United States; that the law should be interpreted to mean that the reorganization or adjustment of the affairs of the distressed debtor is to be had only when agreed to by the creditors and all interested parties. They contend that it nowhere forces the creditor to do anything other than to come into court and prove up his claim and assert his reason for opposing a plan of reorganization of the assets and liabilities of the debtor; that the issuance of certificates of indebtedness, etc., is to take place only after the reorganization plan has been agreed to.

The note provides for the payment of a stipulated sum on April 1, 1935, to Cattle Raisers Loan Company at Fort Worth. The mortgage on the cattle given to secure its payment provides that in the event of default, the mortgagee or its assignee is authorized, among other things, as follows: "To take possession of all of said property * * * or any part or parts thereof at private sale, or public sale, without notice to first parties * * * in the name of the first parties to make such sale, and to execute any and all necessary and proper conveyances to the purchaser * * * or second party may, if it elects, 'enforce its lien by suit in a court of proper jurisdiction. Second party, or other holder of said indebtedness may purchase said property, or any part thereof * * *. First parties further agree to pay an attorney's fee of 10 per cent of the principal and interest on all indebtedness due hereunder if such indebtedness is placed in the hands of an attorney for collection." The deed of trust, in event of default, provides the payee or holder of the note is authorized to have the designated trustee sell the several tracts of land therein described "to the highest bidder for cash at the courthouse door of the county in which the property * * * is situated" on the first Tuesday in any month after posting notices for 21 days, to make the purchaser a deed, to receive and apply a sufficient amount of the proceeds of the sale to the payment of its debt after the payment of expenses. Under the law as it existed at the time of the execution of these instruments, upon default, the mortgagee had a right to file suit, as it did, in Tarrant county on the note and for the foreclosure of its chattel mortgage and deed of trust liens, and after judgment have the property described therein sold under execution and apply the proceeds of sale to the payment of the note, and it had the right to do these things in a reasonable length of time as prescribed by the then existing statute controlling such matters.

Under article 2320—a it may be uncertain what rights the creditor has, but it is certain the statute attempts to give the debtor the right to file a petition, or answer, or intervention, stating such facts "as may exist showing the need for relief under this act," and that he desires "to effect a plan of reorganization and/or adjustment of its debts" and thereupon "the court shall have exclusive jurisdiction of the debtor and his * * * property," and the judge may

appoint custodians, one of which may be the debtor, as in this case, and place the property in their hands, subject to ·his orders and prevent the sale out of court under the deed of trust or its foreclosure, and sale under order of sale, or a sale under the chattel mortgage as authorized by the contract of the parties, and as authorized by law at the time of the execution of the contract. It further provides for "setting aside *a part of debtor's assets or property to creditors, then, upon satisfactory proof that the value of such assets is reasonably of sufficient value to satisfy the value of the claims of such creditors, the court may designate and set aside such assets to the creditors, and thereupon the creditors shall look only to such assets or property so designated and set aside for the satisfaction of their claims. * * * ·Upon the termination of the proceedings, a final decree shall be entered * * * discharging the debtor from his or its debts and liabilities, and terminating all rights of interested· parties* except as provided in the plan, and closing the case. Upon reorganization, *the court may retain jurisdiction of the case as long as it may deem necessary.*" (Italics ours.) The act expressly provides that the plan of reorganization and the order of confirmation shall be binding on the creditor and others. Was it the intention of the Legislature that property conveyed by contract as security for the payment of debts should be used for some other purpose, that the court should have a right to set aside to the creditor only a portion of. the mortgaged property pledged for the security of his debt, and that the creditor should look only to that part (not the whole of the mortgaged property, and not to the individual liability of the debtor) for satisfaction of such creditor's secured claims? This is what the statute clearly provides. Was it the intention of the Legislature that this would happen only upon consent of the creditors, as contended by appellees? If so, they failed to so provide in the act, and we must be governed by the language used. If these things were to be done only when consented to by the interested parties, then the provisions of the act for protest and appeal are superfluous. It is certain in this case that nothing has been agreed to. The only limitation upon the length of time the· court may retain jurisdiction of the case

(which we take to mean, exclusive jurisdiction and control of the property of the debtor) is "as long as it may deem necessary." In short, this statute turns the contract and the security for debt over to the court for it to make a new contract for the parties, and to parcel out the assets of the debtor when and as it may deem advisable. Under this statute, the right of the creditor, under the contract and under the law at the time of the execution of the contract, in the event of default by the debtor to have the personal property described in the chattel mortgage and the real es-' tate described in the deed of trust sold and applied on the debt, and the further right, if the property did not sell for enough to satisfy the debt, to obtain a personal judgment against the debtor for the deficiency therein, are not only delayed, but are permanently taken from him. This cannot lawfully be done. Langever v. Miller (Tex. Sup.) 76 S.W.(2d) 1025, 1029, 96 A. L. R. 836. Under this statute and the judgment of the trial court, the right of the payee of the note under its contract to collect the money at Fort Worth, and its right under the law prior to this act upon default to institute suit there for the debt and foreclosure of its lien, as well as the right to sell the mortgaged property without foreclosure in court for the satisfaction of the debt, are taken from the creditor.

This statute is in many respects similar, in fact, some of its provisions are identical with that addition to the Bankruptcy Act of June 28, 1934, known as the Frazier-Lemke Act. 11 USCA § 203 (s), and Act June 7, 1934, 11 USCA § 207. Congress has the sole authority to enact bankruptcy laws. Two of the important features of the present investigation are the turning over by the debtor of his property to a court, and the discharge of the debtor's obligation. These are important and essential features of the bankruptcy laws and of this law. Congress is not prohibited from impairing obligations of a contract, but the Legislatures of the various states are prohibited from so doing. Louisville Joint Stock Land Bank v. Radford, 295 U. S. 555, 55 S. Ct. 854, 858, 79 L. Ed. ——, 97 A. L. R. 1106. In that case the Supreme Court of the United States held the Frazier-Lemke Act void, because it deprived the

mortgagee of property rights without compensation in violation of the Constitution of the United States, art. 1, § 8; Amend. 5. In the course of the opinion, the court said: "No instance has been found, except under the Frazier-Lemke Act (11 USCA § 203 (s), of either a statute or decision compelling the mortgagee to relinquish the property to the mortgagor free of the lien unless the debt was paid in full. This right of the mortgagee to insist upon full payment before giving up his security has been deemed of the essence of the mortgage."

Had this been a state statute, the court would doubtless have held it void, because it constituted an impairment of the obligation of contracts.

In the case of W. B. Worthen Co. v. Kavanaugh, 295 U. S. 56, 55 S. Ct. 555, 557, 79 L. Ed. ——, 97 A. L. R. 905, the Supreme Court of the United States held a statute of the state of Arkansas, which has similar effect to the one in question an impairment of the obligation of contracts, prohibited by the United States Constitution, art. 1, § 10. There an improvement district was permitted by law to issue bonds and to mortgage benefit assessments as security therefor. The district issued the bonds payable to bearer and executed a mortgage to a bank as trustee for the bondholders. At the time of the execution of the bonds and mortgages the statute contained provisions well planned to make these benefit assessments an acceptable security. Under the law, the lot owners had 30 days for payment of assessments. If payment was not so made, a 20 per cent. penalty was added. Upon a notice of such delinquency, it became the duty of the commissioners to bring suit. The defendant was allowed five days within which to appear and answer after personal service. Twenty per cent. penalty, costs, and attorney's fees were added to the judgment, etc. Later, the Legislature passed certain acts changing the plan to enforce payment of assessments. The time for payment after notice was enlarged from 30 to 90 days. The penalty was reduced from 20 per cent. to 3 per cent. The time to appear after personal service was extended from five days to six months. After judgment, the defendant was allowed 12 months for payment instead of 10 days, as theretofore, etc.

In the course of the opinion, the court used the following language: "A state is free to regulate the procedure in its courts even with reference to contracts already made * * * and moderate extensions of the time for pleading or for trial will ordinarily fall within the power so reserved. A different situation is presented when extensions are so piled up as to make the remedy a shadow. * * * Not even changes of the remedy may be pressed so far as to cut down the security of a mortgage without moderation or reason or in a spirit of oppression. Even when the public welfare is invoked as an excuse, these bounds must be respected. * * * A catalog of the changes imposed upon this mortgage must lead to the conviction that the framers of the amendments have put restraint aside. With studied indifference to the interests of the mortgagee or to his appropriate protection they have taken from the mortgage the quality of an acceptable investment for a rational investor."

In the case of International Building & Loan Ass'n v. Hardy, 86 Tex. 610, 26 S. W. 497, 498, 24 L. R. A. 284, 40 Am. St. Rep. 870, the question was whether an act of the Legislature requiring changes in the manner of sale of land under a deed of trust materially different from that legally contracted for before the passage of the law required compliance with the statute in cases of sale thereafter made under the contract. In discussing the question, the court, in an opinion by Chief Justice Stayton, said: "Is a contract securing to a creditor right to a specific remedy, whereby he may enforce a pecuniary obligation without resort to the courts of the country, subject to such modification and changes as may lawfully be made in the ordinary remedies prescribed by law? We are of opinion that this should be answered in the negative. * * * To admit a subsequent act of the legislature thus to modify and essentially vary the written stipulations of the parties would concede to the legislature a power to make a new contract, and destroy the old altogether."

The Supreme Court of Texas, in Langever v. Miller, supra, in an opinion by Chief Justice Cureton, holding the "Anti-deficiency judgment law" of 1933 unconstitutional, as an impairment of the

right of contract in a deed of trust authorizing a deficiency judgment, said: "We are not much concerned with the superfine distinction sometimes drawn in discussing the impairment of the obligation of contracts, between the 'obligation' and the 'remedies' for their enforcement. * * * It seems to us that the act before us does in fact operate upon and impair the 'obligation' of the contract, in that it nullifies that portion of the contract, read in the light of the then existing statute, which entitled the mortgagee to a deficiency judgment. But, if the statute be regarded as one which merely operates upon the remedy or remedies for the enforcement of the contract, it is obvious that it abridges the rights of the mortgagee resulting from the stipulations in the agreement in such manner as to make the contract less valuable, and denies him lawful remedies which existed when the instrument was executed without substituting therefor others equally valuable and equally effective. Under either conception of the effect of the statute, it impairs the obligation of contracts."

We do not think it will be questioned that the act under consideration makes this contract less valuable to the investor.

"In Louisiana ex rel. Ranger v. New Orleans, 102 U. S. 203, 206, 26 L. Ed. 132, Associate Justice Field declared: 'The obligation of a contract, in the constitutional sense, is the means provided by law by which it can be enforced,— by which the parties can be obliged to perform it. Whatever legislation lessens the efficacy of these means impairs the obligation. If it tend to postpone or retard the enforcement of the contract, the obligation of the latter is to that extent weakened. * * *

"Jones on Mortgages, vol. 3, §§ 1693, 1694, states the rule as follows: 'While minor details of the law relating to the remedy of foreclosure may be changed by statute, no substantial rights of the mortgagee to the enforcement of his security can be impaired or taken away; for example, by laws which delay foreclosure proceedings on which the mortgagee relied in taking the mortgage, or which enlarge the conditions of redemption, or deprive the mortgagee of his right to take possession of his security at the time agreed. * * *

" 'While it is undoubted,' says Ruling Case Law (volume 6, § 321), 'that the legislature may make changes in the remedy, it is necessary that the contract should be left with the same force and effect, including the substantial means of enforcement, which existed when it was made.' By the same authority the doctrine is announced that the most certain test of impairment is that the value of the contract has been diminished. Volume 6, p. 329, § 520." Langever v. Miller, supra.

See 6 R. C. L. § 314, p. 325; § 317, p. 327; § 321, p. 329, 330.

Also see 9 Tex. Jur., § 106, p. 541, et seq.

The opinion of the Supreme Court of Texas in Travelers' Ins. Co. v. Marshall, 76 S.W.(2d) 1007, 96 A. L. R. 802, holding the emergency moratorium law, authorizing continuance of foreclosure suits for a period of seven months, etc., and the attempt by such act to authorize the court to make a contract for the parties, an impairment of the obligation of contracts under Constitution of Texas, article 1, § 16, we think would be decisive of this case, if no other authority were available. We do not deem it necessary to do more than refer to this noted case. We justify the length of this opinion by the importance of this litigation, due to the fact that it is, so far as we know, the first interpretation of this statute by an appellate court. Under the authorities cited, and others referred to therein, we are compelled to, and do, hold that the act is in contravention of article 1, § 16, of the Constitution of Texas, providing that "no * * * law impairing the obligation of contracts, shall be made," and article 1, § 10, of the Constitution of the United States, providing that "no State shall * * * pass any * * * Law impairing the Obligation of Contracts." Having so decided, it is unnecessary to determine whether or not the act in question violates other provisions of the Constitution of Texas and the United States.

The judgment of the trial court is reversed, and the cause ordered dismissed.